McCoy v. Pittsburg Boiler and Machine Co.

---

No. 27,464.

Otis McCoy, *Appellee*, v. The Pittsburg Boiler and Machine Company, *Appellant*.

(261 Pac. 30.)

#### SYLLABUS BY THE COURT.

1. Motor Vehicles—*Lights on Auto Vehicles Using Highway—Construction of Statute.* The provisions of the statute relating to lights on auto vehicles using public highways interpreted, and held to apply to an autotruck whose engine became disabled while transporting its load on a paved highway, and which, because of the engine trouble, was left standing on the highway at night without exhibiting a red light visible at the rear end.

2. Same—*Contributory Negligence—Evidence.* Assignments of error depending on interpretation of the evidence considered, and held not to be well founded.

Appeal from Crawford district court, division No. 1; Daniel H. Woolley, judge. Opinion filed November 5, 1927. Affirmed.

*C. O. Pingry, P. E. Nulton* and *G. L. Stevenson,* all of Pittsburg, for the appellant.

*Phil Callery, J. E. Callery, Caroline A. Lowe* and *R. L. Robertson,* all of Pittsburg, for the appellee.

The opinion of the court was delivered by

Burch, J.: The action was one for damages sustained by the occupant of an automobile driven by another, when the automobile collided with a truck belonging to defendant, which defendant's driver left standing on a public highway in the nighttime without

---

Automobiles, 24 A. L. R. 510; 47 A. L. R. 706; 2 R. C. L. 1192. Highways, 29 C. J. p. 364 n. 12. Motor Vehicles, 42 C. J. pp. 609 n. 18, 610 n. 22, 620 n. 67, 1012 n. 88, 1013 n. 99, 1014 n. 11, 1288 n. 35.

McCoy v. Pittsburg Boiler and Machine Co.

exhibiting a red light visible at the rear end, as required by statute. Plaintiff recovered, and defendant appeals.

A highway known as North Broadway enters the city limits of Pittsburg from the north. Northward from a point about one-half mile from the city limits the highway is 24 feet wide. South of that point the highway is 40 feet wide. A street-car track enters the highway in the west shoulder formed by the widening of the highway. From the place of entrance the street-car track extends in a southeasterly direction until it reaches the center of the highway, and then occupies a space 8 feet wide in the center of the highway, until it reaches the city. The 8-foot space is filled with chats. The 24-foot roadway, the 40-foot roadway southward to the beginning of the 8-foot space, and the two 16-foot roadways outside the 8-foot space, are paved with brick.

About 9 o'clock on the night of November 7, 1925, Joe Bournonville, an employee of defendant, was driving defendant's 3½-ton truck southward on the highway toward Pittsburg. The truck was loaded with an upright boiler. As the truck was crossing the street-car track a short distance south of the place where the track entered the highway, the truck stalled, and because of engine trouble could not be started. Soon afterward, a street car came to the place where the truck was standing, and street-car employees and passengers assisted the driver in moving the truck in a southwesterly direction to the west side of the highway. The truck was placed parallel with and about a foot from the curb. The bed of the truck was about 6½ feet wide, so that its east side was about 7½ feet from the curb. The street-car track directly east of the truck had not yet reached the center of the highway, and the distance from the east side of the rear end of the truck to the west rail of the track was about 10½ feet. The driver left the truck in the position described, and went to Pittsburg.

At about 11 p. m. Arthur McFarland was driving a Ford roadster southward on the highway. With him in the roadster were plaintiff and plaintiff's wife. Plaintiff was sitting on the right side of the seat. McFarland was driving in the center of the highway, which was wet and slippery from drizzling rain. When he approached the car track, he reduced speed to about eight miles per hour, and turned sharply toward the southwest, in order to cross the rails as squarely as possible to avoid slipping on them. The automobile lights disclosed the truck standing directly in front of him, a collision occurred, the Ford roadster was demolished, and plaintiff was

severely and permanently injured. The accompanying sketch will assist in visualizing the scene of the accident.

When the accident occurred there was no red light on the rear of the truck. There was a dim light on the front of the truck, but it was up close to the front of the cab, and was not visible to travelers on the highway approaching from the north. The truck driver testified that, after the truck had been placed at the side of the highway, he went to Pittsburg, procured a lantern and a red handkerchief, returned to the truck, and with the lantern and handkerchief improvised a red light which he placed on the rear of the truck. He said this occurred about 9:45 p. m. There was no lantern on or about the truck when the accident occurred. There were good reasons to doubt the truthfulness of the driver's story, and it may be assumed the jury disregarded it. At about 2 a. m. of November 8 defendant's superintendent placed lanterns on the truck, and it remained in the highway until morning, when it was removed.

The important question in the case is whether the court properly interpreted the statute relating to automobile lights, in the instructions to the jury. The pertinent portion of the statute is part of R. S. 8-122, as amended by section 1 of chapter 84 of the Laws of 1925, and reads as follows:

"That every automobile using any public highway of this state shall show between one-half hour after sunset and one-half hour before sunrise two lamps exhibiting white lights, visible at a distance of three hundred feet in the direction toward which the automobile is proceeding, and shall also exhibit a red light, visible at the rear end."

The court instructed the jury that failure to comply with the statute constituted negligence, and if the injury to plaintiff was caused by failure to exhibit a red light at the rear end of the truck, the verdict should be for plaintiff.

The context of the provision concerning lights relates to operation, and incidents of operation, of motor vehicles on public highways. No person shall operate a motor vehicle at a rate of speed greater than that prescribed. Any person operating a motor vehicle who shall occasion injury to another, shall stop and do specified things. A person operating a motor vehicle shall reduce speed when approaching a railroad crossing or a highway intersection. No driver of a motor vehicle, while operating it upon a public highway, shall use certain kinds of headlights, unless means are provided to prevent

other highway users from being dazzled. There is no express provision in the statute relating to motor vehicles left standing on a public highway.

Defendant contends that when the entire section is considered, the words "every automobile using any public highway," mean no more than every automobile operated on a public highway; that this interpretation is compelled by the provision relating to headlights visible in the direction toward which the automobile is proceeding; that the statute applies to moving automobiles only; and consequently, that the instruction was erroneous.

The purpose of a highway is for passage, travel, traffic, transportation, communication. The automobile is a vehicle used for travel, traffic, transportation, and communication, and the statute is regulatory of such use. Highways are not maintained for the purpose of providing places for storage of automobiles. Such use was not in contemplation of the legislature, and the subject was not referred to in the statute.

There is no indication that the legislature intended to make any sharp distinction in traffic regulation by choosing the terms "operate" and "operating" for some provisions, and by choosing the phrase "using the highway" for the provision relating to front and rear lights. The purpose of the regulation was to promote public safety. The terms employed to express the purpose were not used in any technical sense, and operation of an automobile on a highway, and use of a highway by an automobile, both refer to the same thing, automobile traffic on the highway.

Automobile traffic, like other highway traffic, involves movement from place to place. The movement involved does not, however, demand uninterrupted motion. There may be stops of greater or less duration, according to circumstances, connected with the traffic. When an automobile driver on a crowded street kills his engine just as he is given the "Go" signal, and the traffic officer begins to gesture excitedly and speak vehemently, and those behind toot their horns, and he becomes sensible of a general heating up inside and moisture on his brow, he realizes his car is very much a part of moving traffic. A flat tire to be changed on a muddy or dusty road between hedges, under a blazing summer sun, may arrest motion, but the automobilist is none the less traveling on the highway. Stops for limited periods are quite indispensable to the conduct of

business and to social intercourse generally. All temporary stoppings attending ordinary use of a highway by an automobile passing from place to place are incidents of operation linked with motion by necessary relationship, and in general understanding are not discriminated from motion as disconnected, independent modes of highway use. The subject of regulation by the statute was movement of automobiles on highways, in the sense indicated. A red light at the rear end visible at night was deemed essential. The purpose was to provide a danger signal to overtaking traffic. The warning is more necessary when the automobile is at rest than when it is in motion, and the court holds the regulation applied to defendant's truck, left standing on North Broadway because temporarily disabled while transporting the upright boiler toward Pittsburg.

Courts differ respecting application to auto vehicles standing on highways of statutes relating to display of lights. (1 Blashfield on Cyclopedia of Automobile Law, 390 [1927]; Berry on Automobiles, 5th ed., § 193 [1926]; 47 A. L. R. 703, annotation.) What this court regards as the preponderance of judicial opinion agrees with the views which have been expressed.

The statute applies to auto vehicles allowed to stand on city streets at night, and defendant's attorneys foresee grave complications resulting from its enforcement. The writer of the brief fears that if he should go to church some Sunday night and park his automobile so that its headlights would shine full upon the preacher in the pulpit, he might be arrested for disturbing public worship. It is not likely the preacher would be annoyed. The event would probably plunge him into contemplation of those intense lights which gleam in precincts above and glare in precincts below this sinful world, revealing the dissimilitude between paradise and perdition.

The difficult question in the case is whether plaintiff was guilty of contributory negligence. The jury returned the following special findings of fact:

"5. Could the plaintiff have seen the truck of defendant parked on the west side of the road by looking ahead and observing prior to the collision? A. Yes.

"6. If you answer question No. 5 'yes,' then state how far north of the truck plaintiff could have seen the truck before the collision, had he been looking ahead and observing the road. A. Ten feet."

Before turning to cross the car track, McFarland was driving in

the center of the highway. When he made the turn, he did not proceed directly westward, but southwesterly. When he saw the truck, he turned to the left in an effort to avoid it, but was unable to do so, and his right fender struck the truck "right on the northeast corner of the rear end." The point of collision was necessarily south and west of the place at which the turn was made. The distances were not definitely established, but finding No. 6 evidently implies that the plaintiff could not see the truck before the turn was made. Defendant contends the finding, thus interpreted, is contrary to the undisputed testimony. The Ford lights were good, bright magneto lights, with new bulbs and clear glass lenses. McFarland said he could see an object as big as a truck at a distance of 150 to 200 feet, plaintiff said he could see "pretty fair about 250 feet or somewhere along there," and defendant concludes that if plaintiff had been looking, he could have seen the truck in time to warn McFarland and prevent the accident.

The state of the weather at the time of the accident has been referred to. The side curtains were on the Ford roadster and the windshield was down. McFarland kept the windshield clear of mist in front of him with a windshield wiper. Plaintiff said it was misting, was raining on the windshield, and he could not see very well. The breadth of beam from the Ford roadster lights was not established. The only testimony on the subject was given by McFarland in describing the lights: "They threw a light out at the side the same as an ordinary light." No witness ventured to say what this indicated with respect to visibility of the truck under all the conditions of the accident. McFarland did not say that, while he was driving in the center of the road, his lights were such that, under the weather conditions, he could have seen defendant's truck standing at the side of the road for a distance of 150 or 200 feet, or for any other distance. He said he was looking ahead down the center of the road, and did not see the truck until he turned toward it. Plaintiff testified he was looking out in front straight ahead, and he did not see the truck until the Ford wheels were cut toward the southwest to cross the car track. This testimony is not necessarily incompatible with the description and estimates of light efficiency, and tended to show the truck was not sooner seen because it was not sooner identifiable. Of course plaintiff is held to the consequences of seeing the truck if he could and should have seen it. But this court is not able to solve the question of fact and

declare, in opposition to the approved finding, that plaintiff could have seen the truck before the turn was made to cross the street-car track.

The judgment of the district court is affirmed.