No. 32,194

Ivan Anderson, *Appellee*, v. The Southern Kansas Stage
Lines Company, *Appellant*.

(44 P. 2d 234)

Opinion filed
May 4, 1935.

*J. W. Blood, F. W. Prosser,* both of Wichita, and *W. W. Parker,* of Emporia,
for the appellant.

*I. T. Richardson* and *C. C. McCullough,* both of Emporia, for the appellee.

The opinion of the court was delivered by

Johnston, C. J.: This is an appeal from a judgment rendered
against the defendant in the district court of Lyon county, in an ac-
tion for damages based on personal injuries and property damage re-
ceived by plaintiff in an accident occurring because of the alleged
negligence and carelessness of the driver of a bus, he being the agent,
servant and employee of appellant company.

The appellee is a resident of Emporia; the appellant is the
Southern Kansas Stage Lines Company, which operates motor buses
in Kansas as a common carrier under the rules and regulations of
the public service commission. Appellee testified that on the eve-
ning of May 9, 1933, at about nine o'clock, he was driving a Ford
truck with a trailer west on U. S. highway 50 south, at a point about
a mile and a half east of Emporia; that his truck was a ton-and-a-
half truck with a two-wheel trailer, loaded with about 10,000 pounds
of freight; that the trailer body was a plain stake body about twelve
feet long, and about five feet high from the bottom of the trailer and
attached to the chassis by a fifth wheel; that he had been operating
as a common carrier truck for about four years; that on the night
in question he was driving west on the north side of the pavement
about eight miles per hour. He testified that his truck was equipped

with two marker lights at the rear end of the trailer, with two green lights at the bottom of the trailer, and one headlight and a stationary light which reflected lights of approaching vehicles; that he suddenly felt like he was being crushed from behind and was knocked unconscious, and so injured that he could not go out to the scene of the accident until about two weeks afterward. His load consisted of soap, white soda, lime ricky, asphalt, shingles and tires; and after the accident about one-third was unfit to deliver. That he was in bed a week at home and suffered pain in his hips and back, and it was several days before he was able to get out of bed; that he used crutches nine days, during which time and for some time thereafter he had pain in his left leg and pain in his back, and it was about two months before he was able to use his left leg; that ever since the accident he has been unable to lift heavy objects without pain in his back and hips; that his doctor bill was $25.50; that his business had netted him on an average of $50 per week prior to the accident; that he made three trips per week to Kansas City and back, and that his business now was a total loss.

Special questions were submitted by the court and answered as follows:

1. Was plaintiff stopped on the highway at the time the accident occurred? A. No.

2. If he was traveling, at what speed was he traveling? A. Five miles per hour.

3. Do you find from the evidence that the plaintiff's truck was of such color that it had a tendency to blend in with the highway and could not be distinguished until an approaching motorist was almost to it? A. No.

4. What was plaintiff's business at time of accident? A. Operating a truck line.

5. Was the driver Barnhill's view of the highway temporarily obstructed immediately prior to the accident, and if so, what caused it? A. Yes; lights of approaching car.

6. Do you find that the plaintiff was guilty of negligence in the manner in which his truck was being operated on the highway? A. No.

7. Did plaintiff's truck have a tail light in operation at time of said accident? A. No.

8. Did plaintiff's truck have marker lights showing at the time of the occurrence in question? A. No.

9. What if any—
    (a) Do you allow damage to truck and trailer?.................... $450
    (b) Do you allow for damage to goods?............................ 111
    (c) Do you allow for loss of service?............................. 750
    (d) Do you allow for pain and suffering?.......................... 500
    (e) Do you allow for exemplary damage?........................... ...

10. Did plaintiff have a 1933 tag?   A.  No.
    Did plaintiff have a public-service permit?   A.  Yes.

The jury found generally for the plaintiff.   He had received no notice that his application for certificate of permission had been canceled.   The authority of the commission was not certified until the sixth day after the trial, but it is contended that the absence of a permit would not avoid the consequence of this negligence. Unless the negligent act of the plaintiff was the proximate and procuring cause of the injury it would not bar his recovery.   But the court in instructions 14 and 20 told the jury that it must appear from the evidence that the damages and injury, if any, were the result of such negligence and that such negligence was the proximate cause of the injury and damage.

The defendant contends that the plaintiff was guilty of contributory negligence in operating his truck and trailer without lights. While there was some conflict in the testimony about the lights, the jury trying the case has found upon competent evidence in answer to question number seven that plaintiff's truck did not have any tail light, and in answer to question number eight that there were no lights on the trailer showing at the time of the accident.   The statute requires that a person using such a vehicle on the roads shall exhibit a reflector and lights on the rear of the trailer.

In *Deardorf v. Shell Petroleum Corp.*, 136 Kan. 95, 12 P. 2d 1103, it was held that—

"The statute requires that every automobile used on the public highway between one-half hour after sunset and one-half hour before sunrise shall exhibit a red light visible at the rear end.  (R. S. 1931 Supp. 8-122.)   It is established that the appellants failed to comply with this statute and consequently were guilty of negligence."   (p. 96.)

It is contended by appellant that where a truck operator fails to have his truck properly lighted and the jury specifically finds that it was not properly lighted, that such failure clearly establishes negligence on his part, and he therefore cannot recover damages from one who runs into his truck.

In *Hiller v. Kepler,* 125 Kan. 679, 266 Pac. 73, the jury in answer to special findings stated, "that no lights had been placed on the rear truck with which the automobile collided until after the accident occurred," and this court found that the defendant truck driver who so operated his truck was guilty of contributory negligence in operating his truck in that manner.

In *Barzen v. Kepler,* 125 Kan. 648, 266 Pac. 69, a companion case to the Hiller case, the court held that—

"When the automobile in which she was riding over a highway in the night-time collided with defendant's truck, which was not properly lighted and on which large projecting timbers were being carried, the plaintiff recovered, and it is held that the evidence supports the finding of the jury that the collision and plaintiff's injuries were caused by the negligence of the defendant." (Syl. ¶ 1.)

In the case of *Sponable v. Thomas et al.,* 139 Kan. 710, 33 P. 2d 721, quoting from another case, it was stated:

"The purpose of a highway is for passage, travel, traffic, transportation, communication. The automobile is a vehicle used for travel, traffic, transportation and communication and the statute is regulatory of such use. Highways are not maintained for the purpose of providing places for storage of automobiles. . . . The subject of regulation by statute was movement of automobiles on highways, in the sense indicated. A red light at the rear end, visible at night, was deemed essential. The purpose was to provide a danger signal to overtaking traffic. The warning is more necessary when the automobile is at rest than when it is in motion. . . . (*McCoy v. Pittsburg Boiler and Machine Co.,* 124 Kan. 414, 261 Pac. 30.)" (p. 720.)

There was abundant testimony to show there were no marker lights on the rear end of the trailer before the collision. The driver of the bus said there was no light in view. Aitkens, who was an employee of the Midland Oil Company, testified that he was coming to Emporia that night and had followed the bus traveling about thirty miles per hour; that he turned out to go by it and saw the light of the car that was going east and did not see the truck ahead, and that there were certainly no tail lights nor anything ahead of the bus; that just as the east-bound car passed the bus it hit the center of the truck; that he was only about 200 feet back from where the accident occurred. The crash occurred just a moment after the east-bound car had passed. He testified that he noticed the trailer was dirty, and that it was muddy, about the color of the pavement; that he noticed this after the accident occurred.

R. E. Roth, who lived in Emporia, was driving east about 8:45 or 9 o'clock. He went east about eight miles then turned around and came back; he thought he got back to Emporia about 9:05 p. m. He met the truck coming west; said that it had a headlight, but did not have any lights on the trailer. He passed it going out and when he turned around and came back towards town he noticed that "the trailer had no marker nor tail lights, absolutely not."

Another witness, T. V. Root, who lives in Chase county, was a

passenger on the bus the night of the accident, sitting in the center of the back seat facing straight ahead. He remembered the accident; he saw a dark object coming up in front of the bus and immediately the bus hit it, and the object had no lights on it. Asked how much time elapsed from the time he saw the object until he hit it, he answered, "It was right now."

While the plaintiff alleged and testified that there were lights on the trailer, the jury has settled that question and held that there was no red or green light and no reflector on the rear of the trailer as the law required. It appears that the trailer was not painted, some of the witnesses have spoken of it as muddy, and essentially the color of the pavement. The authorities cited have held that where negligence in not observing the law with respect to notices is the cause of the collision, the party will be held guilty of contributory negligence. (See *McCoy v. Pittsburg Boiler and Machine Co.,* 124 Kan. 414, 261 Pac. 30; *Witte v. Hutchins,* 135 Kan. 776, 12 P. 2d 724; *Conwill v. Fairmount Creamery Co.,* 136 Kan. 861, 18 P. 2d 193; *Anderson v. Thompson,* 137 Kan. 754, 22 P. 2d 438.)

That absence of lights was the proximate and procuring cause of the accident and injury was established by the evidence. These omissions were clearly acts of contributory negligence on the part of plaintiff, and are so declared to be in the decisions cited. While the jury found in favor of the plaintiff in the general verdict, they found the absence of lights in special findings, which prevail over the general findings.

In the instruction the court advised the jury that—

"If the jury find from the evidence that the plaintiff was careless and negligent in one or more of the particulars as charged in the answer at the time or place of the happening, and that such negligence contributed to the damage he sustained, if any, then the plaintiff cannot recover in this case and your verdict should be for the defendant."

The omission of the lights was charged and proven to the satisfaction of the jury and should have been held to be contributory negligence, which bars a recovery by the plaintiff, and should have been so held in the present case. Defendant cites some other grounds of error in the admission of evidence and in the instructions, but having held that the plaintiff was guilty of contributory negligence it is unnecessary to consider other grounds of error assigned by the defendant.

The judgment is reversed with directions to enter judgment for defendant.