No. 33,478

FLOTILLA WATSON, as Administratrix of the Estate of A. A. Watson, Deceased, *Appellee*, v. THE TRAVELERS MUTUAL CASUALTY COMPANY, *Appellant*.

(73 P. 2d 64)

Opinion filed November 6, 1937.

*C. W. Burch, B. I. Litowich, LaRue Royce, L. E. Clevenger, E. S. Hampton* and *R. E. Haggart,* all of Salina, for the appellant.

*Evart Mills,* of McPherson, for the appellee.

The opinion of the court was delivered by

DAWSON, C. J.: This is an appeal from a judgment awarding damages to plaintiff for the death of her husband, who was killed by driving his automobile into the rear end of a heavily loaded truck on a public highway.

The facts which the jury chose to believe were substantially these:

One Ed. T. Kelley was the owner of a two-ton truck. He was engaged in hauling salt from Kanopolis to Salina. Highway No. 40 is paved from Ellsworth eastward to the width of twenty feet with a black line in the center to indicate its two lanes of traffic.

On January 3, 1936, Kelley loaded his truck with 4½ tons of salt at Kanopolis, drove north for three or four miles to highway No. 40 and proceeded eastward thereon. About four miles east of the point where he had turned into highway No. 40 the road rises gently for a distance of 600 feet. West of this rise there is a considerable distance on the highway which is open to the view of persons traveling eastward. When Kelley was about half way up this gentle slope he stopped his truck for five minutes. It was then after dark, and certain lights on Kelley's truck were seen by a farmer and his wife, witnesses, who resided at a point about 400 feet northeast of where the truck was standing. About that time these two witnesses saw an automobile coming from the west with its headlights burning. This automobile was being driven by plaintiff's husband, A. A. Watson. It crashed into the rear of Kelley's truck, swung around it to the left and came to a standstill a short distance from the front end of the truck with Watson dead in its wreckage.

Plaintiff brought this action against Kelley's insurance carrier, defendant herein, charging negligence on the part of Kelley as follows:

The truck was standing on the highway facing slightly southeastward so that its left rear corner extended over the black line dividing the two lanes of traffic. The headlights and dimmers of the truck were turned off, and only the front clearance lights and the left rear clearance light were burning; the rear of the truck had no reflector; and no warning signs, flags, flares or lights had been placed to warn traffic coming from the west. The one rear clearance light was attached in front of a two-inch brace on the body of the truck so that it could not readily be seen by one approaching from the rear when the truck was standing angularly to its proper lane of

traffic and facing southeast. The body of the truck was about four feet above the pavement and was painted a dull red color and indistinguishable from the pavement in the nighttime.

The petition also alleged:

"That on account of the height of the body of the said truck from the pavement, the color of the said body, the lack of proper lights, the lack of flares or other warning signals to the rear of the said truck, the fog along the said ravine, and the fact that the said truck was parked in a traffic lane on a hillside at night, the said A. A. Watson could not see the said truck until within a few feet of it. That as soon as the said A. A. Watson could see the said truck he immediately turned to go around it on the left, but that on account of the position on the highway in which the said truck was stopped, the left rear corner of the said truck extended over the black line dividing the lanes sufficiently for the said A. A. Watson to hit it with his automobile at a point just in front of his right front door. That the force of the collision was sufficient to tear the entire right-hand side off the body of his automobile, but that his automobile went on around the said truck and came to a stop approximately four feet in front of the truck, crossways in the road and in an upright position. That in the said collision the said A. A. Watson was instantly killed and his automobile completely wrecked.

. . . . . . . . . . . . . . .

"That the negligence of the said Ed. T. Kelley, as hereinbefore alleged, is the sole and proximate cause of the death of A. A. Watson and the destruction of his said automobile."

The petition also contained a count in damages for the demolition of the Watson automobile.

Defendant's answer contained a general denial and a plea of Watson's contributory negligence.

The cause was tried before a jury which returned a general verdict for plaintiff for $3,800, and itemized it thus: For the death of Watson $3,500; for the damage to the Watson car $300.

Motions to set aside the verdict covering the damage to the automobile and to grant a new trial on all the usual grounds were overruled, and judgment was entered for plaintiff.

Defendant appeals, contending that no negligence was shown and that contributory negligence was so clearly established that an instructed verdict should have been given. A third contention relates to misjoinder in the matter of damages to the Watson automobile which will be noted later.

Touching the question of Kelley's negligence, there was testimony to support our summarized statement of the facts, and since the jury and the trial court chose to give it credence, it is useless to give space to defendant's evidence which tended to show that the Kelley truck

was properly equipped with headlights, tail light and clearance lights which had been inspected before Kelley started from Kanopolis, and that Kelley "couldn't have gotten through the port of entries" if they had not been properly set, and that they were inspected "each and every time" he passed through a port of entry; that all these lights were burning; that the Kelley truck was not standing on the highway, but was slowly moving up the grade with its heavy load when the Watson car ran into it from the rear. Neither is it of present consequence that defendant's evidence which the jury did not believe tended to show that shortly before the fatal accident one of the headlights on Watson's automobile was not burning and that the sheriff had ordered him to go to a repair shop and get his lights fixed and that he disregarded that admonition; nor is it now of any consequence that defendant's evidence tended to show that the Watson car was being driven at "a terrible speed," or "about sixty miles" per hour shortly before the fatal accident. On the question whether there was sufficient evidence to take the controverted issue of the truck driver's negligence to the jury this court is of one accord and hold that it was a jury question.

Touching the question whether the contributory negligence of the deceased was so clearly established that the trial court should have ruled on it as a matter of law, the evidence was to this effect:

There were no obstructions on the highway to prevent Watson from seeing the truck for a half mile or more before he reached the point of collision. The night was clear, although there may have been a slight haze at a low point in the highway some 300 feet west of the truck. Plaintiff herself alleged, and she also testified, that the headlights and brakes on Watson's car were in good order. Its headlights cast a beam 350 feet ahead. On that gentle rise the rear of the Kelley truck would have been visible within the beam of Watson's headlights at 200 feet; and Watson's car could have been stopped in 108 feet if it had been traveling sixty miles per hour. If running at less speed—at thirty or thirty-five miles per hour, as alleged in plaintiff's petition—it could have been stopped in thirty or thirty-five feet; if at forty miles per hour it could have been stopped in forty-five feet; at fifty miles per hour, in ninety feet. This was the only evidence on the distances within which such an automobile as Watson's could have been stopped with its brakes in good working order when driven by a careful and competent driver.

On this evidence, defendant invokes the familiar rule of law this court has repeatedly applied to damage suits arising from automo-

bile accidents, which, shortly stated, is that it is negligence as a matter of law for a motorist to drive his car at night in such a manner that he cannot stop it in time to avoid a collision with an object within the distance which his headlights will reveal. And a motorist will not be heard to say that he did not see what was there to be seen if he had his eyes on the road ahead of him. Twenty years ago this court announced this rule in *Fisher v. O'Brien,* 99 Kan. 621, 162 Pac. 317, the first section of the syllabus of which reads:

"Independently of any statute it is negligence as a matter of law to drive an automobile along the highway on a dark night at such speed that it cannot be stopped within the distance that objects can be seen ahead of it."

The same rule of law has been applied a score of times since *Fisher v. O'Brien* was decided. Thus in *Jones v. Atchison, T. & S. F. Rly. Co.,* 129 Kan. 314, 282 Pac. 593, plaintiff drove his autotruck into the side of a freight train standing on a railway crossing. He sued for damages, alleging negligence on the part of the railway company, but he was nonsuited on account of his own contributory negligence. This court said:

"At the time the accident occurred the law regulating the use of the highway required that plaintiff's truck be equipped with good and sufficient brakes, and with two lamps exhibiting white lights visible at a distance of 300 feet in the direction in which plaintiff was proceeding; and required plaintiff to drive at a rate of speed reasonable and proper under the conditions.

. . . . . . . . . . . . . . .

"One of the purposes of the statute was to require equipment which will enable a driver to see ahead of him, and it is negligence for him to proceed at such speed that he cannot stop within the distance he can see ahead of him. The rule has been applied to one driving at night (*Giles v. Ternes,* 93 Kan. 140, 143, 143 Pac. 491); to one driving with dim lights (*Fisher v. O'Brien,* 99 Kan. 621, 162 Pac. 317); to one driving at night who could not see because of brightness of the lights of an automobile coming toward him (*Howard v. Zimmerman,* 120 Kan. 77, 80, 242 Pac. 131); to one driving at night when it is misting or raining (*Rhoades v. Atchison, T. & S. F. Rly. Co.,* 121 Kan. 324, 246 Pac. 994); to one driving in foggy weather (*O'Connell v. Lusk,* 122 Kan. 186, 250 Pac. 1059); and to one driving at night on a grade which caused his lights to be projected above an obstruction (*Haines v. Carroll,* 126 Kan. 408, 267 Pac. 986). The result is that if the night be very dark and the fog very thick and the engine smoke very dense, the driver of an auto vehicle who is just driving along the road proceeds at his own risk, unless he correlates speed and ability to stop with ability to see." (pp. 315, 316.)

Why should not this rule of law be applied to the case at bar? It is not one of universal application. In *Conwill v. Fairmount*

*Creamery Co.*, 136 Kan. 861, 18 P. 2d 193, the action was for damages to plaintiff and his automobile in a collision with the rear of a creamery truck which was standing without lights on a damp and slippery pavement on a dark and misty night. This case, in certain details, is not precisely like the one at bar; but part of the opinion is pertinent, where we said:

"It need hardly be repeated that contributory negligence must be clearly established before that question of fact can properly be withdrawn from the jury. . . . Defendant also cites some of our recent cases not greatly different from this one in which this court held that plaintiff's own evidence did establish contributory negligence as a matter of law. (*Haines v. Carroll,* 126 Kan. 408, 267 Pac. 986; *Jones v. Atchison, Topeka & Santa Fe Rly. Co.,* 129 Kan. 314, 282 Pac. 593; *Tuer v. Wayland,* 129 Kan. 458, 461, 283 Pac. 661.) A majority of this court, however, are of the opinion that under the evidence adduced by plaintiff there is a closer analogy between the present case and those of *McCoy v. Pittsburg Boiler & Machine Co.,* 124 Kan. 414, 261 Pac. 30; *Womochil v. List & Clark Construction Co.,* 135 Kan. 695, 11 P. 2d 731; and *Witte v. Hutchins,* 135 Kan. 776, 12 P. 2d 724, where it was held that plaintiff's contributory negligence under quite similar circumstances was not so clearly established as to require or justify a ruling which would take the case from the jury." (pp. 862-863.)

Recent highway accident cases where the evidence of contributory negligence, although strongly persuasive, was not so clear as to justify a directed verdict and did require submission to a jury, are *Barzen v. Kepler,* 125 Kan. 648, 266 Pac. 69; *Hayden v. Jack Cooper Transport Co.,* 134 Kan. 172, 5 P. 2d 837; *Deardorf v. Shell Petroleum Corp.,* 136 Kan. 95, 12 P. 2d 1103; *Meneley v. Montgomery,* 145 Kan. 109, 64 P. 2d 550. In *Bergman v. Kansas City Public Ser. Co.,* 144 Kan. 27, 58 P. 2d 110, which arose out of a collision of a delivery truck and a passenger bus, the familiar rule touching contributory negligence was repeated:

"If the facts were such that reasonable minds could reach different conclusions therefrom, the question of contributory negligence was one for the jury. (*Sponable v. Thomas,* 139 Kan. 710, 33 P. 2d 721, and cases therein cited.)" (p. 29.)

In the Sponable case the collision out of which the action arose occurred about 10:30 p. m. on a February night when the weather was misty, raining, sleeting and occasionally snowing. Defendant's truck stood on the highway without rear lights, flares or other warning signs. Plaintiff's car was properly equipped with brakes and lights and windshield wiper. Owing to the unfavorable weather plaintiff was driving at fifteen miles per hour when he first noticed

defendant's unlighted truck ten or twelve feet ahead. He applied his brakes and swerved to the left, but failed to avert a collision. One of the questions on appeal was whether plaintiff was guilty of contributory negligence as a matter of law in failing to operate his car on that perilous night so that he could stop it within his very restricted range of vision. This court said:

"Was the plaintiff guilty of contributory negligence? The argument is based on the proposition that he was not driving at a rate of speed that would enable him to stop within the distance he could see objects ahead of him. The evidence showed that the plaintiff's car was equipped with standard lights, which were in operation, and that the beam or ray of light showed forward focusing on the ground about thirty feet ahead of the car, and that the lights were about thirty-six inches above the ground; that the truck was unpainted and a dark, drab color; that it had no lights, either tail or other lights at the rear, nor were there any flares or other lights to warn of its location, and that the lower portion of the back end of the truck was about forty-seven or forty-eight inches above the ground. The truck was on the pavement with the rear thereof slightly over on the left-hand side of the center of the highway. The plaintiff's speed was about fifteen miles per hour—the highway was slick from sleet and snow. The plaintiff stated he did not see the truck until he was about fifteen feet from it. Other testimony might be detailed, but the above shows the situation. Appellants contend that at the speed plaintiff was driving he should have and could have stopped after seeing the truck, and in any event it was negligence for him to drive at such a rate of speed he could not stop short of any obstruction within the range of his vision, citing [cases]. . . . If appellant is entitled to judgment on the ground that the plaintiff was guilty of contributory negligence, it must be as a matter of law, for the jury's verdict acquits the plaintiff of contributory negligence as a matter of fact. . . as we view the matter the question of whether there was contributory negligence on the part of plaintiff in not seeing the truck, under the evidence, was not a question of law. but was for the jury." (pp. 719, 721.)

Drawing on these analogous cases for guidance, a majority of this court hold that the fact defendant's truck stood somewhat athwart its lane of traffic, that its left rear corner extended measurably across the center line of traffic, that possibly the tail light was not burning, that both rear clearance lights were not burning and the left one was placed behind an upright standard so that it could not readily be seen by Watson, that the rear of the truck was of a dull red color not readily distinguishable from the pavement after night, that owing to the height of the truck body above its axles there was little or nothing in the nature of an obstruction on the highway which Watson could see by the headlights of his own car until he had gotten close to the truck, and that there was noth-

ing apparent in the circumstances which would call for prompt and instant action on his part to stop his car or turn it far enough to the left to miss the truck. Conceding that the instant case is extreme, perhaps even more so than the Sponable case, a majority of the court decline to hold that Watson's contributory negligence was established so clearly as to require a directed verdict. Rather is the case like *Brugh v. Albers,* 141 Kan. 223, 40 P. 2d 380, another rear-end collision between an automobile and an insufficiently lighted truck standing on a public highway before daylight where the court did submit the question of contributory negligence to a jury, and where the jury courageously and commendably found that if the plaintiff had been keeping an eye on the road ahead and had kept his car under proper control the accident would not have happened and that he was guilty of contributory negligence.

Passing next to the question involved in the item of $300 which the jury allowed as damages to the Watson car: In the course of the trial, the fact was elicited that Watson had carried a "$50 deductible collision insurance policy" on his automobile, and that the plaintiff administratrix had collected $228.75 thereon pursuant to a settlement with the insurer of the automobile in which it was agreed that the sum paid was $50 less than the value of the car. The settlement also provided that the insurer was to be subrogated to the plaintiff's claim against the party liable for the damage to the Watson car. Counsel for defendant moved to strike out all testimony touching the value of the car. The trial court, for the time being, held that the motion should be sustained. After some colloquy the court said it would give plaintiff leave to amend her petition.

"[Counsel for plaintiff]: If the court please, we have received permission to amend our petition. Do you want to consider it amended or do you want us to amend it.

"[Counsel for defendant]: I would like to have you amend it so we know what we are to shoot at.

. . . . . . . . . . . . .

"[Counsel for plaintiff]: If the court please, we will withdraw our request, and that will settle that.

"By the court: Well, it takes out the car and all.

"[Counsel for plaintiff]: It takes out except $50.

"By the court: Well, it takes it all out. It is simply the proposition to amend by reason of the subrogation agreement hereinbefore entered into between this plaintiff and The Niagara Fire Insurance Company; she brings this action for the benefit of the insurance company for the loss of the car.

"[Counsel for defendant]: In order to save time, consider whatever amendment he is going to make, in there, and let's go on with the trial.

"By the court: Yes; I can consider that later."

No amendment was formally made. So far as the proposed amendment which plaintiff intended to make may be discovered from the colloquy just quoted, her counsel conceded that it would take "the car and all" out of the case, except $50. It is undoubtedly the law of this state that although the civil code requires that an action must be brought in the name of the real party in interest, our own decisions have broadly held that where a property loss is in excess of the insurance collectible thereon, the insured is the proper party to bring the action against the wrongdoer, and that he is accountable to the insurance company as trustee and must proportionally reimburse it out of whatever judgment is recovered. (*Railroad Co. v. Blaker,* 68 Kan. 244, 75 Pac. 71; *Smith v. United Warehouse Co.,* 123 Kan. 515, 255 Pac. 1115; *Klingberg v. Atchison, T. & S. F. Rly. Co.,* 137 Kan. 523, 526, 21 P. 2d 405.)

Here, although the trial court had ruled that all the damages were out of the case, and plaintiff's counsel acquiesced in that ruling except for the matter of $50, yet counsel for defendant suggested that "whatever amendment he is going to make" be considered as made, "and let's go on with the trial." This practice is not unusual. Ordinarily where the permitted amendment is not actually made, it is regarded as informally made if sufficient evidence on the subject matter is offered to determine the point involved. (*Manufacturing Co. v. Boyle,* 46 Kan. 202, 26 Pac. 408, syl. ¶ 3; *Tipton v. Warner,* 47 Kan. 606, 28 Pac. 712; *Thompson v. Howard Motors Co.,* 122 Kan. 339, 342, 252 Pac. 468.) To be critically exact we think that both the trial court and plaintiff's counsel were in error. The damage to the Watson car was not "out of the case," as the court had ruled; nor was it out of the case "except $50" as plaintiff conceded. But since the trial court eventually approved the verdict containing the item of $300 for the demolition of the car, we are bound to conclude that it eventually got a hold of the correct theory of plaintiff's right to sue therefor; and the judgment, being essentially correct, notwithstanding the intermediate erroneous ruling, cannot be disturbed. (*In re Estate of Dennis,* 146 Kan. 121, 126, 68 P. 2d 1083.)

The judgment is affirmed.

Dawson, C. J. (dissenting in part): I think the undisputed evidence clearly and conclusively established the contributory negligence of the deceased as a matter of law, under the familiar cases

relied on by defendant. The evidence which establishes the negligence of a defendant does not by mere recapitulation serve the additional purpose of exculpating the plaintiff of his contributory negligence, no matter how inexcusable the negligence of the wrongdoer may be. The question whether the contributory negligence, otherwise well proven, is one for the jury arises when other circumstances than the wrongdoing of defendant have to be considered, as in the Conwill case, *supra,* where a succession of blinding headlights on a misty night and on a slippery highway might, in a jury's opinion, relieve the plaintiff from being held guilty of contributory negligence. So, too, it was the snowy weather and the slippery pavement that relieved Sponable of being guilty of contributory negligence—not a mere recapitulation of the incidents of negligence of Thomas, Sponable's adversary. (*Sponable v. Thomas,* supra.) The basis for justifying a submission of the question of contributory negligence to the jury in this case is unsound and I cannot assent to it.

THIELE and WEDELL, JJ., join in this dissent.