No. 33,602

A. P. Berry, *Appellee*, v. Glen Weeks, *Appellant.*

(73 P. 2d 1086)

Opinion filed December 11, 1937.

*Charles S. Schnider,* of Kansas City, for the appellant.

*Lee E. Weeks,* of Kansas City, for the appellee.

The opinion of the court was delivered by

Dawson, C. J.: This is another highway rear-end collision case.

Berry, the plaintiff, was a bricklayer employed in Kansas City. He resided in Bonner Springs, and traveled back and forth to his work on state highway No. 32, in a Dodge sedan.

Defendant, Glen Weeks, owned and operated a Chevrolet motor truck having a semitrailer attached thereto.

On the evening of December 5, 1935, after nightfall, while defendant was driving his truck westward over highway No. 32 between Kansas City and Bonner Springs, he had some tire trouble. The weather was foggy and rainy. The highway was paved, but the shoulders of the road were soft and muddy; the slab was wet, but not slippery. Weeks stopped his truck close to the north side of the pavement and set about the fixing of his tire. Shortly thereafter

Berry came along from Kansas City and ran into the rear end of the truck and trailer, sustaining physical injuries and damage to his automobile.

Plaintiff's petition narrated the foregoing facts and alleged that defendant was negligent in various particulars—stopping his truck on the paved highway and obstructing traffic thereon, failing to put out warning signals or lights to warn travelers and, particularly, to enable plaintiff to avoid a collision with defendant's truck. Plaintiff pleaded his specific injuries, loss and damage, and prayed judgment for $15,000.

Defendant's answer contained a general denial and a plea of contributory negligence.

In the jury trial which followed, the evidence for plaintiff tended to show that his automobile was equipped with good lights and a windshield wiper. He had pleaded that his brakes were also in good condition, and his direct testimony was to that effect; but in his cross-examination he admitted that they failed to work on the occasion of the accident. The record reads:

"Q. . . . And then say what did you immediately do when you saw this object? A. I put my brakes on.

"Q. And did you stop? A. I hit the truck.

"Q. Your brakes were in good condition? A. Yes, sir; they were.

"Q. And they worked all the time, didn't they? A. I suppose they did; I don't know.

"Q. Well, don't suppose; don't you know whether your brakes took hold or not? A. My brakes always have worked.

"Q. Do you know whether your brakes worked or not? A. They always have worked; yes, sir.

"The court: I wish the witness would answer the question. If he knows in any way whatsoever whether his brakes worked at that particular time, I wish he would say so.

"Q. I will ask you, did they work or did they not work this time? A. Judging from the way they done, I would say they failed to work; yes, sir."

There was testimony that as plaintiff drove west he was occasionally blinded by lights of eastbound automobiles until shortly before his car collided with the truck. But by the jury's finding No. 7 the last of those had passed when plaintiff's car was still 75 feet east of the stalled truck. The evidence for plaintiff was that defendant's truck had no lights; the evidence for defendant was to the effect that its headlights, tail lights and clearance lights conformed to state

regulations and were burning. No special question was submitted to the jury on this controverted point, but it was impliedly settled by the general verdict for $2,700 in favor of plaintiff.

The jury answered special questions thus:

"1. How many feet east of defendant's truck would the beams of the headlights of plaintiff's car have revealed defendant's truck on the night of December 5, 1935? A. Fifteen feet.

"2. Do you find that plaintiff, immediately before the accident, was looking ahead and carefully observing the highway? A. Yes.

"3. At what rate of speed was plaintiff traveling when he saw defendant's truck? A. Twenty m.p.h.

"4. Traveling at the speed you find plaintiff was traveling in question No. 3, within what distance could plaintiff have stopped his car at the time and place in question? A. Twenty-five feet.

"5. With what was defendant's truck loaded at the time of the collision? A. Pine boxes.

"6. State whether or not the load on defendant's truck was visible to the driver of any vehicle approaching from the east. A. Yes.

"7. How far east of the truck was plaintiff's car when the last of the eastbound automobiles passed him? A. Seventy-five feet.

"8. How many inches from the pavement was the lowest portion of the body of defendant's truck on the night in question? A. Three feet.

"9. At a distance of 35 feet, how high above the pavement would the beam of plaintiff's headlights reveal objects? A. Three feet.

"10. At the time of the accident was plaintiff driving his car at such speed that he could safely stop the same within the distance that ordinary objects on the highway would be revealed by the light of his headlights? A. Yes."

The usual post-trial motions were presented and overruled and defendant appeals, urging various errors.

We shall not stop to discuss the question whether as against a demurrer there was sufficient evidence to prove negligence on the part of defendant. Since the jury chose to believe the evidence tending to show that his truck was parked on the highway after dark without lights, a prima facie case of negligence was established. (*McCoy v. Pittsburg Boiler and Machine Co.*, 124 Kan. 414, 261 Pac. 30, syl. ¶ 1; *Watson v. Travelers Mutual Cas. Co.*, 146 Kan. 623, 625, 626, 73 P. 2d 64; and notes in 24 A. L. R. 507, 510; 47 id. 703, 706; 62 id. 970, 972; 78 id. 815, 816.) On this same point, however, appellant emphasizes the reluctant testimony of plaintiff himself, which tended to show that defendant's negligence was not alone the cause of the accident, but that the failure of the brakes of plaintiff's automobile materially contributed thereto. In *Anderson v. Southern Kansas Stage Lines*, 141 Kan. 796, 44 P. 2d 234, the plaintiff's truck was run into from the rear by a motor bus. In the action which followed

there was a verdict and judgment for plaintiff, but this court was compelled to reverse that judgment because the jury's special findings were that at the time of the accident (about 9 o'clock p. m.) plaintiff's truck had neither tail lights nor marker lights.

It is the statutory duty of a motorist to maintain his automobile in a high state of efficiency in respect to brakes, lights, and the other standard safety equipment designed to insure its safe operation. (G. S. 1935, 8-122, since amended by Laws 1937, ch. 283.) And where there is a failure of such equipment—here it apparently was the brakes on plaintiff's car—neither law nor justice can disregard that important fact in a defense to an action for damages based on a plea of contributory negligence. From the time the automobile became a regular mode of conveyance on our highways, this court has declared and adhered to the rule that it is negligence as a matter of law for a motorist to drive an automobile along a highway at night at such a speed that it cannot be stopped within the distance that objects can be seen ahead of it. (*Fisher v. O'Brien*, 99 Kan. 621, 162 Pac. 317; *Jones v. Atchison, T. & S. F. Rly. Co.*, 129 Kan. 314, 282 Pac. 593.)

Appellant directs attention to the jury's special findings, and contends that the rule of law just stated should have compelled a judgment in his behalf, *non obstante veredicto.* His argument is to this effect: According to the special findings, plaintiff was traveling at a speed of 20 miles per hour; at that rate he would require 25 feet in which to stop; but the headlights of his car would not reveal the defendant's truck beyond the distance of 15 feet. These facts, argues defendant, prove that plaintiff did not keep his car under such control that he could stop it within the distance that the truck could be seen ahead of it. At a distance of 15 feet he saw the truck, but then he needed 25 feet in which to stop. Plaintiff set his brakes but— "judging from the way they done I would say they failed to work; yes, sir."

It is also rather obvious that the special findings are not consistent with each other. Finding No. 10 says that plaintiff was driving his car at such speed that he could safely stop it within the distance that ordinary objects on the highway would be revealed by his headlights, while finding No. 1 is that he could only see 15 feet ahead of him on that dark and rainy night, yet he was driving at 20 miles per hour (finding No. 3) and at that speed he required 25 feet in which to stop (finding No. 4). In *Jones v. Atchison, T. & S. F. Rly. Co.,* supra, it was said:

"In the absence of statute it is negligence for a driver to operate his auto vehicle at night without lights which will enable him to see objects ahead of him ·in time to avoid accident. The statute requiring lights was not enacted merely to secure the giving of notice of approach of the vehicle carrying the lights. One of the purposes of the statute was to require equipment which will enable a driver to see ahead of him, and it is negligence for him to proceed at such speed that he cannot stop within the distance he can see ahead of him. The rule has been applied to one driving at night (*Giles v. Ternes,* 93 Kan. 140, 143, 143 Pac. 491) ; . . . to one driving at night when it is misting or raining (*Rhoades v. Atchison, T. & S. F. Rly. Co.,* 121 Kan. 324, 246 Pac. 994) ; to one driving in foggy weather (*O'Connell v. Lusk,* 122 Kan. 186, 250 Pac. 1059). . . . The result is that if the night be very dark and the fog very thick and the engine smoke very dense, the driver of an auto vehicle who is just driving along the road proceeds at his own risk, unless he correlates speed and ability to stop with ability to see." (p. 316.)

It is familiar law that the special findings control the general verdict where they are inconsistent with it. (*Carlgren v. Saindon,* 129 Kan. 475, 479, 283 Pac. 620; *Cole v. Cook,* 137 Kan. 250, 20 P. 2d 483.) But where the special findings are inconsistent with each other, as they manifestly are here, a judgment based thereon cannot stand. In *Willis v. Skinner,* 89 Kan. 145, 130 Pac. 673, the syllabus reads:

"Consistent special findings control the general verdict when contrary thereto; but when they are inconsistent with one another—some showing a right to a verdict and others showing the contrary—the case is left in the condition of being really undecided, and a new trial should be granted."

Another error urged by appellant is predicated on the trial court's instructions given and refused. The court declined to give the jury an instruction touching the well-established, familiar, and pertinent rule of law as declared in the O'Brien case, *supra,* and as declared by statute. The instruction as given began with a fair statement of the correct and pertinent law, but followed it up thus:

"However, the rule stated above is applicable only in cases where vehicles or other objects on the highway may be seen by the aid of proper lights; and in this case if the jury find from the evidence that the defendant, after stopping his truck, had not placed warning flares upon the highway a reasonable distance from said truck, and that on account of the size, shape, color or location of defendant's truck which was stopped upon the highway, a motorist, exercising reasonable care and driving his car properly equipped with lights and brakes, at a reasonable speed, would be unable to see said truck in time to prevent colliding with it; and you further find that the plaintiff in this case did exercise reasonable and ordinary care in the driving of his car, and notwithstanding the exercise of such care on his part, he did collide with said truck and plaintiff was thereby caused to be injured and his automobile damaged,

then you are instructed that the plaintiff would be entitled to recover in this case and your verdict should be for the plaintiff."

We cannot approve such broad and general qualifications of the rule. Critically examined, it is not clear whether the requisite "proper lights" mentioned in the instruction refers to those of plaintiff's car or defendant's truck, but it seems to relate to the latter, in which case it was not pertinent and could only tend to confuse the jury in an instruction intended to state the pertinent law governing the issue of plaintiff's contributory negligence. The instruction is also subject to criticism where in effect it seems to say that disregard of plaintiff's duty to operate his car so that he could stop it within the range of his headlights, or disregard of his statutory duty not to operate at a speed greater than was reasonable and proper, having regard to the conditions of the road, would not bar a recovery if the other issuable facts were established. What other issuable facts? The defendant's negligence? However clearly those issuable facts were established, the plaintiff's contributory negligence would bar a recovery, and in this respect defendant's objection to the instruction as given was well taken.

In view of what we have said above, what disposition should be made of this appeal? The judgment cannot stand. But the present record does not appear to be in shape so that judgment should be ordered thereon. Consequently the judgment must be reversed and the cause remanded for a new trial. It is so ordered.