No. 27,949.

MARTINA G. BARZEN, *Appellee*, v. H. A. KEPLER, *Appellant.*

(266 Pac. 69.)

SYLLABUS BY THE COURT.

1. HIGHWAYS—*Lights on Vehicles Using Highway—Projecting Timbers—Negligence—Evidence.* In an action to recover for injuries sustained by plaintiff when the automobile in which she was riding over a highway in the nighttime collided with defendant's truck, which was not properly lighted and on which large projecting timbers were being carried, the plaintiff recovered, and it is held that the evidence supports the finding of the jury that the collision and plaintiff's injuries were caused by the negligence of the defendant.

2. MOTOR VEHICLES—*Reasonable Care in Driving—Jury Question.* Whether or not the driver of the automobile was exercising ordinary and reasonable care in handling his automobile, just prior to and at the time of the collision, under the circumstances stated in the opinion was fairly a question of fact for the determination of the jury.

3. NEGLIGENCE — *Contributory Negligence — Choice Between Alternatives Involving Risk.* Where the driver of the automobile was placed in such a position by the negligence of the defendant as to be compelled instantly to choose, in the face of apparently grave and impending peril, between two hazards, and he makes such a choice as an ordinarily prudent person might make under a like situation, he is not necessarily negligent if it turns out that if he had chosen the other hazard he might have avoided the collision and escaped the injury which resulted.

4. MOTOR VEHICLE—*Collision—Proximate Cause—Instructions.* Objections to the instructions given to the jury, to the effect that the doctrine of proximate cause should have been more fully stated, considered and held not to be a ground for reversal.

Appeal from Wyandotte district court, division No. 2; FRANK D. HUTCHINGS, judge. Opinion filed April 7, 1928. Affirmed.

*Arthur J. Stanley* and *W. L. Wood*, both of Kansas City, for the appellant.

*E. S. McAnany*, *M. L. Alden* and *Thomas M. Van Cleave*, all of Kansas City, for the appellee; *James T. Cochran*, of Kansas City, of counsel.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action was brought by Martina G. Barzen against H. A. Kepler to recover for personal injuries sustained in a motor-vehicle accident which occurred on December 11, 1925, on

Automobiles, 51 L. R. A. n. s. 996; 2 R. C. L. 1192, 1196; 27 A. L. R. 1197. Motor Vehicles, 42 C. J. pp. 1139 n. 75, 1237 n. 43, 1262 n. 40, 1289 n. 49.

the Victory highway near the town of Tonganoxie.  Upon a trial before a jury a verdict in favor of plaintiff was returned in which she was awarded damages in the sum of $2,000.  Defendant appeals.

In a petition plaintiff alleged in substance that on the evening of December 11, 1925, she and three other students of the Kansas University were traveling along the highway from Lawrence to Kansas City in a motor car owned by her father.  Fred Ward was driving the car, and after passing Tonganoxie they approached a caravan of trucks owned by defendant, going in the same direction. The rear truck, it was alleged, was carrying large timbers about seventy feet long and about twenty-four by fourteen inches square, which had been placed one on each side of the truck, projecting about eight feet in front of it and about thirty feet back of it, and it was alleged that the timbers were closer together at the front than at the rear, and were so placed that they were about four or five feet above the surface of the highway.  It is charged that although it was dark, there were no red lights on the ends of the timbers nor on the rear truck so as to be visible without obstruction by other parts of the truck; and that Ward, who was driving the car in which the plaintiff was riding, did not discover the projecting timbers until he ran into one of them, although it is said that Ward was looking ahead and exercising diligence to avoid injury to himself and those riding with him.  The plaintiff suffered serious injuries due, it was alleged, to the negligence of the defendant and his employees in operating trucks after dark with the long timbers projecting without a red light or signal thereon, or the giving of any warning so as to apprise others using the highway of the fact that the timbers projected beyond the truck.  The following are the special findings returned by the jury:

"1.  At what hour did defendant's five-ton Mack truck arrive at Pleasant street and Victory highway in Tonganoxie, on December 11, 1925?  A.  5:50.

"2.  Did the driver of said truck stop the same east of said intersection on said date for the purpose of placing lights thereon?  A. Yes.

"3.  If you answer the last preceding question Yes, state how far east of said intersection said truck was stopped.  A. 200 feet.

"4.  If you answer question 2 Yes, state the hour of the evening of December 11, 1925, said truck was stopped.  A. 5:55.

"5.  Did the driver of said truck at said time and place fasten a lighted red light on the west end of the timber on the north or left side of said truck?  A. No evidence who placed lights.

"6.  Did the driver of said truck at said time and place put a lighted white

light on the east end of said timber and turn on its two front white head-lights? A. No evidence who placed lights.

"7. At what hour of December 11, 1925, did the Cadillac coupé driven by Frederick H. Ward, in which plaintiff was riding, arrive at the intersection of said Pleasant street and Victory highway? A. 6:02.

"8. Was Frederick H. Ward acting as plaintiff's agent in driving said Cadillac coupé from Lawrence toward Kansas City, and at the time of the accident, on December 11, 1925? A. Yes.

"9. How far east of the intersection of Pleasant street and Victory highway did the collision between plaintiff's car and defendant's truck occur? A. 860 feet.

"10. What distance ahead or east of the Cadillac coupé was defendant's said truck when the driver of the coupé first saw it? A. 70 feet.

"11. At what rate of speed was said Cadillac coupé traveling at the time the driver thereof first saw said truck? A. 25 or 30 miles per hour.

"12. In what distance could said Cadillac coupé have been stopped while traveling at the rate of speed given in your answer to question 11? A. 25 to 30 feet.

"13. Could said Cadillac coupé have been stopped at said time within the distance its lights revealed defendant's said truck ahead of it? A. Yes.

"14. Did the driver of the Cadillac car see a huge object in the line of his vision just prior to said collision? A. Yes.

"15. If you answer question 14 Yes, then state how far ahead of said Cadillac coupé said huge object was when the driver of the Cadillac coupé first saw it. A. 70 feet.

"16. Could the driver of said Cadillac coupé have stopped it within the distance its lights revealed said huge object ahead of it? A. Yes.

"17. Was defendant's said truck the huge object which Ward, the driver of said Cadillac car, testified he saw in front of his car shortly before the accident? A. Yes.

"18. Did the plaintiff ride in said Cadillac coupé with Ward, the driver thereof, from Lawrence up to the time of said accident? A. Yes.

"19. If you answer question 18 Yes, then state whether plaintiff had an unobstructed vision at all times of the highway ahead of said Cadillac coupé from the time it left Lawrence until the time of the accident. A. We do not know.

"20. Was this light placed on the west end of the north timber prior to the accident? A. Yes.

"21. If you answer the preceding question Yes, then state at what point on the highway said truck was standing when said red light was placed thereon. A. 200 feet east of Pleasant street.

"22. Was there a red light on the end of the north timber of the 5½-ton truck at the time of the accident? A. No."

The defendant moved for a new trial and also for judgment in his favor upon the special findings of the jury, notwithstanding the general verdict. Both motions were overruled. It appears from the record that the Victory highway on which the accident occurred is a

much traveled road, and both parties knew or must be held to have known of the congestion on the highway. As the accident occurred after six o'clock of a December day and after darkness had fallen, there was an impelling necessity for lights on vehicles passing upon or over the highway. The lamps on the automobile on which plaintiff was traveling had been lighted sometime before the accident, but there is a conflict in the testimony as to lights or warnings on the truck of defendant. Witnesses for the defendant testified that the caravan, consisting of three trucks, stopped near Pleasant street, Tonganoxie, and lanterns were hung upon them, and that a lantern was placed near the end of the north timber of the rear truck prior to the accident. Ward, the driver of the automobile, testified that he drove over a·cutoff dirt road west of Tonganoxie, and because of ruts and holes in the dirt road he slowed down the automobile, but when he reached the pavement on Victory highway east of the town he speeded up and started down the slope towards the place of the accident. As he went down he discovered a huge object ahead of him, but could not determine what it was nor in the darkness could he determine how close he was to it, as there were no lights on the object. When he went closer he decided that he would have to turn to the left of the object to avoid hitting it. He did turn to the left, but when he did so he discovered the lights of a car approaching from the east on that side of the road, so he applied the brakes and turned to the right behind the truck. In doing so he missed the timber on the left side of the truck, but collided with the projecting timber on the right side. It pierced the cowl of the automobile, inflicting the injury mentioned to plaintiff and killing V. L. Miller, another occupant of the automobile. He testified that he could have safely passed the truck if there had been no car approaching from the east on that side of the pavement. He also testified that his lights were on and were burning properly, and he was watching the road and traffic ahead of him, but his lights were focused on the pavement directly in front of his automobile, and therefore did not show the character of the object ahead of him or any more than the outlines of the main part of it. He said he saw and realized that there was an object ahead of him when he was about sixty to seventy-five feet from it, but that there were no lights on the object, "absolutely none." Others said that no lights were to be seen on the rear of the truck, and one witness testified there was no light on the end of the timber at the time of the accident, but that some of

the boys on the truck nailed a lantern on the north timber a short time later while others were engaged in taking care of the injured persons.

As the findings disclose, the driver of the rear truck stopped about six o'clock in the evening for the purpose of placing a light on the truck. That a red light was placed on the end of the north timber sometime prior to the accident, but it is expressly found that there was no red light on the end of the north timber at the time of the accident, and it is admitted that there was no tail light on the truck itself. The defendant appears to have depended on lanterns alone for lighting purposes. While it appears that the driver of the truck undertook to put a light on one of the projecting timbers on the truck, and actually did so in some fashion before the accident, it is settled that there was no light there at the time of the accident. Whether the lantern placed there was not securely attached or was not lighted is not found, but the jury has found that there was no light there when the collision occurred. Driving in the nighttime, it was the bounden duty of the defendant to place and keep lights on the truck, loaded as it was with projecting timbers. As the seventy-foot timbers on each side of the truck were closer together at the front and widened out toward the rear in a sort of V-shape, it would appear that more than a single light on the end of one of the timbers would be necessary to properly warn and protect others traveling on the highway. The operation of such an unusual and dangerous instrumentality on a congested highway in the nighttime without taking reasonable precautions for others lawfully on and using the highway, as described in the record, cannot be regarded as the reasonable and ordinary care required by law.

The principal contention of the defendant, however, is that the driver of the automobile failed to exercise due care in operating his car, and that his negligence directly contributed to the collision and the injury sustained. He argues that the driver of the automobile saw a huge object ahead of him when he approached within seventy feet of it, that he could have brought his car to a stop in twenty-five feet from the point where he was when the object was first seen, that it was the duty of the driver of the automobile then to bring his car under control and be prepared to avoid the danger of running into the overtaken truck, and also to keep a vigilant lookout for cars coming in the opposite direction. The contention is that even if the huge object was without any lights it was neverthe-

Barzen v. Kepler.

less seen by the driver of the automobile, who was then warned that he was approaching the object in the highway, and that in driving on and turning to the left when there was another car coming from the opposite direction was negligence which contributed to and should be regarded as the cause of the accident. It is further said that the fact that he misjudged the nearness of the on-coming car and undertook to pass to the left of the truck was not the fault of the defendant. His predicament and the fact that there was not then an opportunity to pass the truck, it is said, was not due to the absence of lights on the truck, but should be attributed to the carelessness of the driver of the automobile.

In the circumstances, can it be said that the driver was guilty of contributory negligence, or was it a question of fact for the jury? The driver was going at a reasonable rate of speed, when there loomed up in front of him what the jury called a huge object. It must be assumed that the truck was not properly lighted to warn the driver of the overtaking automobile. It appeared to be on the right side of the road, and the natural thing for the driver of the automobile to do was to pass to the left of it. He turned to the left, but then he saw a car coming in the opposite direction, whereupon he applied his brakes and endeavored to turn in behind the truck. If there had been lights on the projecting timbers so that he could have seen them, the collision might have been avoided. As it was, he did avoid striking the north timber, but collided with the south one. It may be assumed that the driver, when he turned to the left, then saw the body of the truck, and acted upon the theory that it was an ordinary sized vehicle, but timbers not actually seen projecting behind the vehicle about thirty feet was something not to be anticipated by the driver.

It is true, as the defendant contends, that a driver of an overtaking car who turns out to pass another should use care not only to safely pass the vehicle overtaken, but should also have regard for vehicles approaching in the opposite direction, but it was not easy for the driver of the automobile to determine the proximity or the speed of the on-coming car until he turned from behind the truck in front of him. When he did turn to the left he discovered that he had to pass, not only a single vehicle, which might have been accomplished, but that he had to pass a caravan of three trucks on which were the projecting timbers, and which he found he could not safely do. In the darkness, with the lights of his car focused on the pavement,

which did not reveal the unlighted timbers that were between four and five feet above the pavement, a confusing and difficult problem was presented to the driver of the automobile. The absence of lights was the primary cause of his plight. When the truck in front was discovered he took the ordinary course of drivers to avoid it by turning to the left. He was not required to stop his car and walk forward to see whether the vehicle in front was unusual in form and had timbers projecting from it. The driver was not running his car at an excessive rate of speed, but, as stated, was running it at a speed in which he could have stopped it in a distance of twenty-five to thirty feet. His undertaking to pass the long caravan, which he had to forego because of apparent danger that he could not safely pass it before meeting the car coming from the east, cannot, we think, be declared contributory negligence as a matter of law. One placed in a position of danger through the negligence of another, who has to determine at once which of several courses to pursue in order to avoid an impending danger, and happens to choose one less safe than another, is not to be judged by the ordinary rules. Unerring judgment is not required in an emergency requiring prompt action. In *Twomley v. C. P. N. & E. R. R. R. Co.*, 69 N. Y. 158, it was said:

"Where one is placed by the negligent acts of another in such a position that he is compelled to choose upon the instant, and in the face of apparently grave and impending peril, between two hazards, and he makes such a choice as a person of ordinary prudence placed in the same situation might make, and injury results therefrom, the fact that if he had chosen the other hazard he would have escaped injury does not prove contributory negligence." (Syl.)

In *Barnhardt v. Glycerin Co.*, 113 Kan. 136, 213 Pac. 663, the court approved a rule cited from another authority, in which it was said that—

"'Persons suddenly placed in a position of peril and impending danger do things which ordinarily would be acts of negligence, but acts done in such extreme circumstances are not to be judged by ordinary rules, and if an act has to be performed in a brief period, with no time in which to determine the best course, negligence cannot be predicated of it.'" (p. 138.)

A case having some of the features of the instant one is *Lane v. Mullen, Inc.*, 285 Pa. 161. There the plaintiff was driving an automobile at night, and suddenly there loomed up about twenty feet in front a large steam shovel which had been parked on the street without warning lights. The motorist could have stopped his car within ten feet of the object, but instead of doing so turned to the

Barzen v. Kepler.

left with the purpose of passing around it. He cleared the main body of the steam shovel, but struck a coal box which projected out from the side, causing injuries and death to the occupants of the car. The defendant contended that the collision was due to the contributory negligence of the motorist, in that the lamps on his car were not up to the statutory standards and did not furnish illumination for a distance ahead of 200 feet. "Dimmers" had been placed on the motorist's car so that the rays only penetrated thirty feet ahead. It was held that the failure of the lights on the automobile was not the cause of the accident, and that, even if they had been sufficient, they would not have disclosed the projecting box on the side of the steam shovel; and further, that it could not be said as a matter of law that a failure to take into account every detail of an object placed in front of a motorist by his lights, is negligence. Among other things it was said:

"As the steam shovel loomed out of the darkness, plaintiff could have stopped his car before striking it, but concluding there was space sufficient to go around it, he turned his car to the left. In so doing, the projecting box on the left side of the steam shovel, even if the rays of his lamps had shown high enough to reach its elevation, would have been thrown into the shadow of the shovel, and would have been obscured from his view—this would have been the case whether his lights as he was turning extended for 200 feet or 30 feet—and therefore the state of his lights as to their disclosure ability did not cause him to strike the projection; defendant's failure to so light it that it would be seen was the sole cause." (p. 164.)

We conclude that the question of the contributory negligence contended for by defendant was one for the determination of the jury, and that there is evidence in the record to support the finding adverse to defendant's contention.

Another contention of defendant is that the court erred in failing to define the term "proximate cause" in its instructions to the jury. While the court did not give in a separate paragraph an abstract definition of proximate cause, it did set out fully the claims of the parties what must be shown by the plaintiff to establish the liability of the defendant, stating that if defendant failed to exercise ordinary and reasonable care, and his negligence was the cause of the injury, he would be responsible for it unless plaintiff was guilty of contributory negligence. The court explained at length the rules of contributory negligence, and after explaining the precautions which the driver of an automobile must take upon a highway, stated that if there was a failure to use such care, and "such failure on the

Barzen v. Kepler.

part of said driver *caused or directly* contributed to the collision in question herein, then you are instructed that said driver was guilty of contributory negligence and plaintiff would not be entitled to recover, and your verdict should be for the defendant."

In another part of the instructions, in dealing with speed at which the automobile was driven, it was added that if the driver was driving at a speed in excess of that prescribed by statute, and failed to exercise reasonable care for the safety of himself and others, and that if in such failure "he was violating the aforesaid statute, and that the collision in this case was caused or *directly contributed* to by reason of the violation of the statute, then you are instructed that the operator of said car was guilty of contributory negligence and the plaintiff would not be entitled to recover."

In view of the instructions given with reference to the direct cause of the accident and injury, we think the defendant has suffered no prejudice by the lack of a further definition or instruction as to proximate cause. In referring to the matter of negligence of the driver of the automobile, the court, on the other hand, further said:

"If by reason of the shape, size, location, or from any extraordinary and unusual cause, an object in his path is difficult to see and determine the character thereof, and he runs into it and damages result, then it's a question for the jury to determine whether under all the circumstances disclosed by the evidence the motorist has exercised reasonable and ordinary care and taken reasonable and prudent precautions for his own and the safety of others," etc.

We find no prejudicial error in the record, and therefore the judgment is affirmed.