No. 36,474

EDISON TOWELL, *Appellee,* v. KENNETH STALEY, *Appellant.*

(166 P. 2d 699)

Opinion filed March 9, 1946.

*Roscoe W. Graves,* of Emporia, argued the cause for the appellant.

*Milton P. Beach,* of Oskaloosa, argued the cause, and *O. S. Samuel,* of Emporia, was on the briefs for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action for damages to plaintiff's truck alleged to have been sustained when the truck in question while being driven by plaintiff collided with the truck of defendant, which it was alleged was parked on the right-hand side of the high-

way in the nighttime without lights. Judgment was for the plaintiff. Defendant has appealed.

The petition alleged that plaintiff was driving his gasoline transport truck in an easterly direction on U. S. Highway No. 50 south, at 2 a. m., and that due to the negligence of defendant plaintiff's truck collided with an International pickup truck owned and operated by defendant; that the defendant was guilty of negligence in that he had brought his truck to a stop and left it standing unattended on the highway without displaying lights or other warning devices; that it was standing upon the concrete highway directly in the path of the vehicle operated by plaintiff and plantiff was unable to see it because of the lights of another vehicle directed toward him and because of no lights or flares on defendant's vehicle. The damage to the plaintiff's truck was itemized and judgment was asked in the amount of $625.32.

Defendant filed an answer and cross petition. The answer specially denied that defendant was guilty of any negligence in connection with the collision, and made allegations that plaintiff was guilty of gross negligence in that he was driving at an excessive rate of speed and continued to drive at that speed when blinded by the lights of an approaching automobile just prior to the collision, and in not having his truck under control so that he could turn aside and avoid the collision and that this negligence was the proximate cause of the collision.

In the cross petition the defendant made all the allegations of the answer a part, and then alleged that the plaintiff drove his transport truck into the pickup truck of the defendant on Highway 50 south at approximately 2 a. m.; that defendant's truck was parked on the highway; that all its lights, including the taillight, were on at the time he left the truck and at the time the plaintiff collided therewith. Substantially the same acts of negligence were alleged that were in the answer. Damages to defendant's truck in the amount of $410 were alleged. Judgment was prayed for $410. Defendant's demurrer to plaintiff's evidence and his motion for a new trial were overruled and judgment entered for the amount of the verdict.

Defendant argues that his demurrer to the evidence of plaintiff should have been sustained. He urges first that the plaintiff's evidence established that he was negligent as a matter of law because he continued to drive his truck down the highway and increased his

speed when he was blinded by the bright lights, to which reference has already been made. This will require an examination of the record. If there was any substantial evidence to sustain the cause of action pleaded by plaintiff the demurrer was properly overruled. In examining the question we must indulge all presumptions and draw all inferences from the established facts favorable to the plaintiff. He testified that he was driving in an easterly direction on Highway 50 south on May 2, 1942, about 2 a. m., with his transport truck loaded with gasoline. He approached a bridge about three miles east of Emporia. There was a left turn as one approached this bridge from the west, making a rather sharp angle at the west end of it. He was driving about thirty miles an hour. He saw some headlights on the other side of the bridge and slowed up to see whether the vehicle was coming across the bridge and saw it was parked, so he continued on across. The car on the east side of the bridge was facing him. It was on the opposite lane of travel from that on which he was traveling and facing in the direction from which he was coming, with its lights on. When he passed these head-lights he saw another vehicle in front of him about twenty-two feet from the end of the bridge. It was a pickup truck, was faced in the same direction plaintiff was traveling and was completely in his lane of travel and without lights. He attempted to drive between the two vehicles but caught the back end of the pickup truck with his right front wheel. This broke the hydraulic brake on his truck. He lost control of it and it went into the ditch at the left side of the road and turned over. There was no one in the pickup truck. By the time he had dismounted from his truck the vehicle which had the bright lights crossed the bridge to the west and turned onto a side road to the south. The damages to his truck were $750. He lost $50 worth of gas, had a towing charge of $25 and lost the use of his truck in the amount of $190.

On cross-examination plaintiff testified that he had his lights on and that they were in good condition; that he first saw the lights on the vehicle that was on the opposite side of the road when he was three hundred to four hundred feet from the bridge; that they were very bright and he could not see anything past them because of these lights except to the sides. When he saw that the vehicle with the lights on was on the other side of the road he increased his speed on account of the grade to the east of the bridge; that he did not see defendant's parked truck until he had passed the blinding lights;

that he could not say whether or not he could have seen the taillight on defendant's truck if it had been on; he was going about thirty-five miles an hour.

On redirect examination plaintiff testified that when one meets real bright lights on the highway at night he cannot see any objects beyond them but he thought he could have seen the taillight on the parked truck if it had been on.

During plaintiff's cross-examination when he was asked whether if there had been a taillight on the truck he could have seen it, he hesitated to say whether he could or could not, and objection of his counsel to the question was sustained. Later, on redirect examination he testified as follows:

"Q. Is your vision such even in those cases where they don't dim their lights—you can see cars on the other side? A. It don't make any difference what it is—you meet bright headlights and you can't see objects beyond that set of headlights.

"Q. If a car was traveling in the same traffic lane—in your traffic lane with a tail light—do you think you could see it? A. Yes, I do—if there was a light.

"Q. Found that out from your experience? A. Yes, I think I have driven about enough that I could tell one."

Later on recross-examination by counsel for defendant he testified:

"Q. Mr. Towell, you told me you didn't know whether you could see it or not—now what do you say? A. I have always seen the tail light before when I run up behind a car when I meet another car. I am saying out there—there was no light there.

"Q. Are you saying, or not saying, if that taillight was burning—and as you were blinded with the light—that you could have seen it. A. I think I could have seen it."

The other evidence introduced by plaintiff was to the effect that the road at this point made a turn toward the northwest that was about one hundred to one hundred and twenty-five feet long west of the bridge. There was evidence by the defendant to the effect that he had hit a horse on the highway just before he reached the bridge and shortly after he crossed it his truck came to a stop; that he left it with the lights burning and went to telephone to his wife. Defendant introduced some other evidence from which it might have been argued that the car, the lights of which plaintiff saw, was coming from the east and was a pickup truck being driven by plaintiff's wife who had come to the scene of the accident in response to a call. This is not argued by either party and will not be further considered in this opinion.

Defendant argues that the evidence of the plaintiff taken in its entirety brought the case within a long line of previous decisions of this court which deny recovery in instances wherein a driver of an automobile deliberately and knowingly drives into darkness under circumstances which completely obscure his vision of the highway ahead of him and drives at a speed which makes it impossible to avoid striking an object in his lane of traffic after it comes within his range of vision.

A very recent case in which such a rule was applied is that of *Frazier v. Cities Service Oil Co.*, 159 Kan. 655, 157 P. 2d 822, in which, among others, the following cases are cited: *Chance v. Murry*, 143 Kan. 476, 54 P. 2d 981; *Robinson v. Short*, 148 Kan. 134, 79 P. 2d 903; *Carson v. City of Wichita*, 148 Kan. 215, 80 P. 2d 1114; *Goodman v. Wisby*, 152 Kan. 341, 103 P. 2d 804; *Harrison v. Travelers Mutual Gas Co.*, 156 Kan. 492, 134 P. 2d 681; *Curtiss v. Fahle*, 157 Kan. 226, 139 P. 2d 827; *Richards v. Chicago, R. I. & P. Rly. Co.*, 157 Kan. 378, 139 P. 2d 427; and *Slaton v. Union Elec. Rly. Co.*, 158 Kan. 132, 145 P. 2d 456.

Reference to the foregoing will disclose citation of many other cases wherein the rule has been applied in a variety of circumstances.

The plaintiff contends that the circumstances in the instant case bring it within the rule to the effect that the question of the plaintiff's contributory negligence is one upon which reasonable minds might reach different conclusions and therefore the question was properly submitted to the jury and cannot be determined by the court as a matter of law. In support of such a contention see the following incomplete list of cases decided by this court: *Abbott v. Wyandotte County*, 94 Kan. 553, 146 Pac. 998; *Fisher v. O'Brien*, 99 Kan. 621, 162 Pac. 317; *McCoy v. Pittsburg Boiler & Machine Co.*, 124 Kan. 414, 261 Pac. 30; *Barzen v. Kepler*, 125 Kan. 648, 266 Pac. 69; *Womochil v. List & Clark Construction Co.*, 135 Kan. 695, 11 P. 2d 731; *Billings v. Aldridge*, 133 Kan. 769, 3 P. 2d 639; *Williams v. State Highway Comm.*, 134 Kan. 810, 8 P. 2d 946; *Hayden v. Jack Cooper Transport Co.*, 134 Kan. 172, 5 P. 2d 837; *Witte v. Hutchins*, 135 Kan. 776, 12 P. 2d 724; *Deardorf v. Shell Petroleum Corp.*, 136 Kan. 95, 12 P. 2d 1103; *Conwill v. Fairmount Creamery Co.*, 136 Kan. 861, 18 P. 2d 193; *Sponable v. Thomas*, 139 Kan. 710, 33 P. 2d 721; *Anderson v. Thompson,* 137 Kan. 754, 22 P. 2d 438; *Anderson v. Southern Kansas Stage Lines*, 141 Kan. 796, 44 P. 2d 234; *Meneley v. Montgomery*, 145 Kan. 109, 64 P. 2d

550; *Watson v. Travelers Mutual Cas. Co.*, 146 Kan. 623, 73 P. 2d 64; and *Frakes v. Travelers Mutual Cas. Co.*, 148 Kan. 637, 84 P. 2d 871.

The question which this court must decide is—which rule of law applies to the facts in the present case?

One of the oldest rules of law followed by this court is to the effect that in considering a demurrer, all of the testimony favorable to the plaintiff must be accepted as true and all unfavorable testimony be disregarded. (See *Sponable v. Thomas*, supra, and *Hill v. Southern Kansas Stage Lines*, 143 Kan. 44, 53 P. 2d 923.)

With such rule in mind, additional consideration will be given to the plaintiff's evidence. When the plaintiff drove around a curve in the highway he saw the bright lights of a truck; he continued driving between 300 and 400 feet, at which point he slowed down the vehicle before going onto a bridge; at such time he saw that the vehicle having the bright lights had stopped and was apparently waiting for him to drive across the bridge, which he did. The bridge was 100 feet long. Between the far end of the bridge and a point twenty-two feet distant the truck with the bright lights upon it was standing. It cannot be said, as a matter of law in this case, under the rule requiring the plaintiff to be given the benefit of all favorable inferences, that the plaintiff, during such time, was completely blinded by bright lights. He was able to drive over a curved road; he was able to slow down while approaching a bridge and determine that a vehicle in front of him had stopped; he was able to drive across a bridge without difficulty and even when he reached the point where the bright lights were blazing into his eyes, he testified that he could have seen a taillight, if it had been lighted, twenty-two feet ahead of him, and he further testified that he could see at that time the sides of the road. His testimony is as follows:

"Q. The lights on this truck were they very bright? A. Very bright.

"Q. That blinded you so that you couldn't see the truck or anything else past them? A. You couldn't see nothing except this set of headlights—except on the sides—of course."

When the plaintiff drove off the far end of the bridge, he was within twenty-two feet of defendant's unlighted, and according to plaintiff's testimony, invisible pickup truck which had been left completely in plaintiff's driving lane. Between the invisible truck and the far end of the bridge, and therefore within twenty-two feet, another truck was parked with its bright lights turned on. The

plaintiff testified he did not see the invisible truck until he passed the headlights of the other truck. Within a short distance, obviously less than twenty-two feet, he either had to stop a gasoline transport consisting of a tractor and a semitrailer with a loaded 300-gallon gasoline tank upon it—weighing in all about 36,000 pounds—or else drive in such manner that the entire ensemble would miss two trucks, one parked in his own lane and the other blocking the remaining lane of the highway. The two trucks must have been within ten feet of each other if we indulge in the presumption that the truck with the headlights turned on was even comparatively short in length. The plaintiff testified he could not see beyond the set of headlights and he could not see defendant's truck until he passed the headlights. The record fails to show the distance of the headlights from the far end of the bridge but they must have been less than twenty-two feet from the defendant's unlighted truck when the plaintiff passed it because the truck with its headlights burning, was parked between the bridge and the defendant's truck. Must a driver always drive at such a speed that he can stop his vehicle or turn it aside within less than twenty-two feet after he has passed a set of bright headlights which momentarily blind him? We are asked to so conclude in this case as a matter of law if we find the plaintiff guilty of contributory negligence.

Rules of law relative to the driving of motor vehicles should be practical. Consideration of the application of the rule advocated by the defendant to the facts in the present case results, from a practical standpoint, in the following observations:

Every motorist realizes from common experience that the passing of a car with its bright headlights turned on very frequently, if not always, causes a driver's vision to be temporarily impaired to some extent. The extent of the impairment is dependent upon the severity of the bright lights and the nature of the highway ahead. For simplicity purposes if one assumes that the plaintiff's truck was traveling thirty miles an hour when it was driven off the bridge and the defendant's unlighted truck was twenty-two feet ahead, then it must follow that the plaintiff had an interval of less than one-half of a second in which to stop. The plaintiff could not have turned to the left and missed the defendant's truck because of the proximity of the other truck. It is contended that the plaintiff was driving too fast. If he had been driving only

fifteen miles an hour he would have had less than a second in which to stop. If he had been driving seven and one-half miles an hour he would have had less than two seconds in which to stop, and these figures allow the driver no time for comprehension of the necessity for stopping and the application of brakes. In *Sponable v. Thomas,* supra, evidence was introduced showing that a car being driven ten miles an hour would travel twenty-nine feet during the two seconds it would take the driver to get the brakes in action. To assert, as a rule of law, that a motorist must drive in such manner that he can comprehend an unexpected danger and stop a motor car in less than two seconds simply could not seem practical to any man who ever owned an automobile and a watch. A rule of law which would require a motorist to reduce his speed when confronted by bright lights, below the last suggested figure, might just as well require a motorist to stop insofar as the practical operation of such a rule is concerned. Must he stop?

In the case of *Barzen v. Kepler,* supra, the following is stated:

"The absence of lights was the primary cause of his plight. When the truck in front was discovered he took the ordinary course of drivers to avoid it by turning to the left. He was not required to stop his car and walk forward to see whether the vehicle in front was unusual in form." (p. 654.)

Syllabus paragraph one of the case of *Anderson v. Thompson,* supra, reads as follows:

"The proceedings considered in an action for damages for death of an automobile operator resulting from a collision of automobiles on a highway, and *held,* an instruction to the effect it is the absolute duty of an automobile driver who is blinded by bright lights of an approaching automobile to stop was properly refused."

The opinion in the last cited case reads as follows:

"When the bright lights had passed by she saw a standing car ahead of her and about twenty feet away. She immediately applied the brakes and turned to the left, but was unsuccessful in avoiding a collision. . . . Plaintiff requested an instruction to the jury that it was the duty of the driver of the Thompson car to stop when vision was inhibited by blinding lights of the car approaching from the west. If this were the preëmptory rule governing night automobile driving, a person obliged to leave Topeka after dark to make a trip to Kansas City on highway U. S. No. 40 might not reach his destination much before morning." (p. 755.)

The opinion continues:

"The motorist may assume others using the highway will exercise ordinary care and will always be alert to avoid collision." (p. 757.)

The last cited rule was followed in *Sponable v. Thomas,* supra, wherein the opinion reads as follows:

"In a case involving the same issue as here, this court said in *McCoy v. Pittsburg Boiler and Machine Co.,* 124 Kan. 414, 417, 261 Pac. 30:

" 'The purpose of a highway is for passage, travel, traffic, transportation, communication. The automobile is a vehicle used for travel, traffic, transportation and communication and the statute is regulatory of such use. Highways are not maintained for the purpose of providing places for storage of automobiles. . . .'

"The plaintiffs in proceeding along the highway had a right to believe that it was safe and that there were no hidden, undisclosed defects such as an unlighted truck standing in the path of travel. (Citing cases)" (p. 720.)

Such a rule is applicable provided the driver of a vehicle cannot discover, in the exercise of reasonable care, the obstruction within time to avoid hitting it and provided that the driver is not at the time guilty of any negligence himself. Possibly, therefore, it cannot be said that the rule is completely decisive of this case because one of the questions to be decided was whether the plaintiff was guilty of negligence which caused or contributed to the accident. The question, therefore, was for the jury.

In considering a case similar in some of its circumstances to the instant case, this court held in *Meneley v. Montgomery,* supra, as follows:

"Whether the driver of the coupe, in this case, was able to observe the cattle truck in her lane of traffic in time to prevent the collision, with the proper exercise of care under all the circumstances, could not be answered as a matter of law, but was a proper question for the jury. To adopt the contention advocated by appellants as conclusive in every situation where an obstruction unexpectedly appears without warning would result in the erection of a legal monstrosity, the effects of which would be too terrible to contemplate. Carried to its logical conclusion, that doctrine would mean that a vehicle approaching from an opposite direction could suddenly and without warning turn squarely in front of a car traveling at a reasonable and proper rate of speed, in its own proper lane, and thereby make the latter guilty of negligence. The contention is untenable." (p. 112.)

As a matter of practical comparison, it makes little difference whether the object suddenly appears in front of a car because it turned squarely in front of it, or whether the obstruction suddenly appears because of its unlighted condition and the effect of bright lights—over neither of which elements the driver of an approaching automobile has any degree of control. It is asserted, however, that the plaintiff in the present case knew or could have known that he would be temporarily partially blinded when he

passed the bright lights but that, notwithstanding such knowledge, he drove at a dangerous rate of speed past them, into darkness. We have already demonstrated that if he had reduced his speed to as low as seven and one-half miles an hour, in all probability the collision would have occurred anyway. Consequently, the speed at which the plaintiff was driving had little to do with the accident. It cannot be said in this case that the plaintiff was driving without good lights or without adequate brakes or that he could not have, under ordinary circumstances, stopped his vehicle within the range of vision of his lights. He did not continue to drive into relative darkness after he perceived that his visibility was poor, as was true in the case of *Robinson v. Short*, supra, relied upon by the defendant. This is not a case comparable in its facts to those in the case of *Harrison v. Travelers Mutual Cas. Co.*, supra. In the last cited case the driver drove past two or three cars which were approaching from the west with bright lights. At such time the jury found that the car was traveling approximately fifty miles an hour and that the occupants could not see a truck ahead of them more than thirty-five feet. The opinion in that case clearly points out that the jury made no finding to the effect that the driver of appellee's car was *suddenly* blinded and that a careful search of the record failed to disclose that there was any evidence of sudden blindness. The inference in the present case favorable to the plaintiff is that he was only blinded as he passed the bright lights. It should be noted that a jury in the present case might have concluded that the plaintiff was justified in proceeding across the bridge without stopping because of the implied suggestion that he do so arising by reason of a truck waiting on the other end of the bridge for the plaintiff to proceed across the bridge. In *Howard v. Zimmerman*, 120. Kan. 77, 242 Pac. 131, another blinding-light case, the jury found that the defendant, who was engaged with the driver in a joint enterprise, permitted the car to be driven too fast. In such case on a straight road, the driver drove forty-five to fifty miles an hour and ran into a horse and buggy. Immediately before the collision the horse and most of the buggy had been driven entirely off the pavement, and there were no obstructions which prevented the driver of the car from turning the car to the left and thereby entirely missing the horse and buggy. The occupants of the automobile testified that they could not see because of the bright lights of an automobile coming from the west. In such cir-

cumstances this court held that a jury was justified in finding the defendant guilty of negligence. It was not so decided in the Zimmerman case as a matter of law although some dictum in the case may indicate to the contrary.

Obviously time and space will not permit a comparative analysis of all of the cases in which the questions raised in the present appeal have been considered by this court. However, the case of *Conwill v. Fairmount Creamery Co.*, supra, should be given consideration because it is very similar to the instant case as to the facts.

In the last cited case the plaintiff was driving his automobile during a slightly misty night over a road which was damp and a little slippery; the defendant's large creamery truck was standing without lights on the highway facing eastward at the west entrance of a concrete bridge. Plaintiff was driving at a rate of thirty to thirty-five miles an hour. As he approached the place of accident he met a westbound automobile, the lights of which prevented him from seeing clearly ahead of him. Immediately behind this westbound car came another, whose lights also obstructed plaintiff's view ahead. When the plaintiff passed the second truck he saw for the first time defendant's truck about twenty feet ahead of him. A third car was then approaching the bridge from the east so that the plaintiff could not swerve to the left and miss the truck without danger of colliding with the third automobile and the distance was too short in which to stop his own car which was then traveling twenty-five miles an hour, in time to avoid a collision with defendant's truck. The district court sustained a demurrer to the evidence of the plaintiff. In reversing the district court, this court had the following to say:

"It need hardly be repeated that contributory negligence must be clearly established before that question of fact can properly be withdrawn from the jury. To justify that course in the present case defendant directs attention to the fact that plaintiff was driving at a rate of 30 to 35 miles an hour when he was blinded by the lights of approaching automobiles. He could not see what was ahead of him on his side of the road, so he took a chance that the road was clear." (p. 862.)

The facts outlined in the cited case demonstrate a clearer case of possible contributory negligence than those in the present case because the night was misty and the road was wet and slippery, which conditions increased the hazards under which the plaintiff was driving. Nevertheless, this court held that the question was

one for the jury and not one of law and cited with approval the case of *McCoy v. Pittsburg Boiler and Machine Co.,* supra.

Without further continuing the discussion of the cases on this question it is sufficient to say that a majority of the court are convinced that the facts in the present case bring it within the rule followed in the case of *Deardorf v. Shell Petroleum Corp.,* supra, from which the following is quoted:

"It is a well-established rule of law that, in determining whether a given statement of fact establishes contributory negligence as a matter of law or is a question of fact to be determined by the jury, the test is, if the question of contributory negligence is one that is reasonably open to debate—one on which reasonable minds might differ—it is a question of fact for the jury. If, however, the facts are such that reasonable minds could reach but one conclusion, which conclusion is that of contributory negligence, it is a question of law. The facts in this case clearly establish negligence on the part of the appellants in failing to have their truck properly lighted. On the other hand, the conduct of the appellee as shown by the evidence does not warrant this court in holding that he was guilty of contributory negligence as a matter of law." (p. 98.)

In the present case the negligence of the defendant consisted of leaving his truck parked in the nighttime on a well-traveled highway without lights or warning signals of any kind. Since there were no objections to instructions we are warranted in assuming that the jury was instructed properly on the question of proximate cause. The question of whether this negligence of the defendant was the proximate cause of the collision was one for the jury under all the surrounding facts and circumstances. The defendant argues, however, that his demurrer to plaintiff's evidence should have been sustained because the defendant was not guilty of actionable negligence. In this connection he cites and relies on what this court said in *McCoy v. Fleming,* 153 Kan. 780, 113 P. 2d 1074. That was a case where the plaintiff stopped his car during a traffic jam on a crowded highway between Lawrence and Topeka after a football game. The court held that where a driver of an automobile approaching the place where an accident had occurred was compelled to stop on account of traffic he was not guilty of violating G. S. 1939 Supp. 8-570. That decision is not in point in this case. The cited section of the statute provides, among other things, that it shall be unlawful for any person to leave any vehicle attended or unattended upon the paved or main-traveled part of the highway when it is practical to stop, park or leave the vehicle off such part

of the highway. Attention is also directed to G. S. 1943 Supp. 8-5,108 which reads in part:

". . . (b) Whenever any motor truck and its lighting equipment are disabled during the period when lighted lamps must be displayed on vehicles and such motor truck cannot immediately be removed from the main traveled portion of a highway outside of a business or residence district, the driver or other person in charge of such vehicle shall cause such flares, lanterns or other signals to be lighted and placed upon the highway, one at a distance of approximately 100 feet in advance of such vehicle, one at a distance of approximately 100 feet to the rear of the vehicle, and the third upon the roadway side of the vehicle."

This statute is a safety provision. Had the defendant complied with it there would have been no collision. There is no pretense that there was any such compliance. The record discloses that the defendant drove his truck approximately 200 feet before he was compelled to stop. The jury was warranted in concluding that in the exercise of due care he could have pulled his truck to one side off the main traveled part of the road at some point between the place where he collided with the horse and the place where he did stop it on the highway. The evidence introduced by the plaintiff showed that the truck was left with no taillights burning and without its headlights turned on. There is no evidence at all about the lights being disabled. All of these matters were questions of fact for the jury. Even in the absence of such a statute, it is negligence under such conditions to leave a vehicle parked upon a highway. (See *Anderson v. Southern Kansas Stage Lines*, supra.) Surely this court would not be justified in holding that cars or trucks can be left upon the highway in defiance of the statute and the owners or drivers thereof be relieved in all cases from responding in damages by reason of a rule which holds that anyone who runs into the parked vehicles is guilty of contributory negligence as a matter of law.

We see no reason for disturbing the conclusion of the jury in the present case. The judgment of the trial court is affirmed.

WEDELL, J. (dissenting): The question is whether defendant's demurrer to plaintiff's evidence should have been sustained. In treating that question I am conceding plaintiff's evidence was sufficient to establish defendant's negligence. We need, therefore, pursue only the question of plaintiff's negligence.

That question requires an analysis of the facts. It is, of course,

elementary that on demurrer all of plaintiff's evidence must be construed in the light most favorable to him. It is also true that all inferences reasonably to be drawn from that evidence must be made in his favor. That, however, does not permit us to ignore plaintiff's own plain, positive and undisputed testimony where he is the only witness with respect to the particular factual point, or points, involved. Nor does it permit courts to draw inferences contrary to his own plain and unqualified testimony. Were the rule otherwise courts could completely nullify or change the testimony of any witness.

Before considering plaintiff's testimony I desire to frankly but respectfully state that, in my opinion, the real question presented by the relatively simple and undisputed facts in this record is not accurately reflected by the majority opinion. The question is there stated as follows:

"Must a driver always drive at such a speed that he can stop his vehicle or turn it aside within less than twenty-two feet after he has passed a set of bright headlights which *momentarily* blind him?" (Emphasis supplied.)

No member of this court so contends. Not even counsel for plaintiff (appellee) contends plaintiff was only "momentarily" blinded. The opinion of the court concludes as follows:

"Surely this court would not be justified in holding that cars or trucks can be left upon the highway in defiance of the statute and the owners or drivers thereof be relieved *in all cases* from responding in damages by reason of a rule which holds *that anyone* who runs into the parked vehicles is guilty of contributory negligence as a matter of law." (Emphasis supplied.)

I know of no one who favors the establishment of such a wholly unrestricted and unreasonable doctrine. We are not dealing here with all cases which may possibly arise. It will be entirely sufficient for present purposes to decide this particular case and to make sure we decide it upon the undisputed facts disclosed by this record.

It must be clear to the most casual reader that the majority opinion interprets plaintiff's evidence to mean that the view of his lane of traffic, as he approached the scene of collision, was obscured only "momentarily," and then only "partially," and that this momentary partial blinding occurred only at the point where the plaintiff passed the blinding lights. Assertions clearly intended to convey that impression run through the entire opinion. Concerning these numerous assertions it is sufficient to say that, as I under-

stand it, not even counsel for plaintiff contend plaintiff was only "momentarily" blinded or that the vision of objects in his lane of traffic was only "partially" obscured as he was approaching the blinding lights. The record is clear that plaintiff could see nothing except the bright lights, the location thereof and the sides of the road. Manifestly then the blinding lights prevented him from seeing what was in his lane of traffic. That is where he was driving. Counsel for plaintiff do not contend the accident occurred on the side of the road but insist it occurred directly in plaintiff's lane of traffic. Plaintiff's ability to observe the sides of the road only enabled him to remain in his lane of traffic. It did not enable him to observe objects or obstructions in that lane.

In order to avoid all uncertainty concerning the evidence I prefer to examine the original transcript of the record rather than to rely on the abstracts furnished by the parties. This procedure is in nowise intended as a reflection on counsel for either party. In fact, I find very little, if any, disagreement among them concerning the facts. Moreover, I find my own interpretation of the facts to be in substantial accord with theirs. Nor do I differ substantially with the majority opinion relative to the limited facts disclosed by the direct examination of the plaintiff.

Let us, however, see whether plaintiff, while approaching the scene of collision from the west, was suddenly, or only "momentarily" blinded, and whether his view of his lane of traffic was only "partially" obscured. Those particular points were not developed on plaintiff's direct examination. They were clearly developed on his cross-examination. No effort was made to change or modify that portion of his cross-examination. It therefore stands wholly undisputed. It reads:

"Q. You were coming around this curve at thirty miles an hour and you saw them for the first time—the lights on this other truck, or did you see them before you turned the corner? A. *I saw the lights on this other vehicle before I turned the corner.*

"Q. *About how far back when you first saw the lights of the other truck or vehicle?* A. I don't know exactly—you can't see around that curve until you get *almost in to it.*

"Q. Have you a judgment of the distance when you first saw the lights of this truck? A. I don't know for sure—*three or four hundred feet.*

"Q. Three hundred feet from the truck? A. No.

"Q. Or from the bridge? A. *From the bridge.*

"Q. The lights on this truck—were they very bright? A. *Very bright.*

"Q. That blinded you so you couldn't see the truck or anything else past

them? A. *You couldn't see nothing except this set of headlights—except on the sides—of course."* (Emphasis supplied.)

Notwithstanding the above-quoted plain, positive and undisputed testimony the opinion states:

"The inference in the present case favorable to the plaintiff is that he was *only blinded as he passed the bright lights."* (Emphasis supplied.)

No testimony is set forth justifying such an inference. I deem it wholly unnecessary to pursue the matter of this inference further. It may, however, be well to say that I do not find where counsel for plaintiff contend for such an unwarranted inference in favor of their client.

The opinion further states:

"It is asserted, however, that the plaintiff in the present case knew or could have known that he would be *temporarily partially* blinded when he *passed* the bright lights but that, notwithstanding such knowledge, he drove at a dangerous rate of speed past them, into darkness."

Neither counsel for appellee nor any member of this court so asserts. The plain facts are there was no mere temporary blinding only as plaintiff passed the bright lights nor was plaintiff's vision of his lane of traffic only partially obscured at that particular moment. The vision of his lane of traffic had been completely obscured, as plaintiff's evidence plainly shows, while he was watching the sides of the road, before he reached the bridge. Furthermore, the bridge was 100 feet long and plaintiff had at least observed the bright lights 300 to 400 feet west of the *bridge.* Notwithstanding the very bright lights he increased his speed and continued to drive when he could see nothing in his lane.

The question, therefore, is not whether a person merely momentarily and partially blinded by bright lights, and only at the point where he passes such lights, is guilty of contributory negligence, as a matter of law, if he strikes an object beyond such blinding lights. The real question is whether he is guilty of such negligence if, after having had knowledge of the bright lights when 400 or 500 feet away, he increases his speed and continues to drive at such increased speed when he knows he can see nothing in his lane of traffic.

Additional admitted facts should be noticed. This particular plaintiff was entirely familiar with this highway. He had driven a transport truck over this road five or six times a week for a period of five years. When he observed the bright lights 400 or

500 feet away he knew he had a curve and bridge to negotiate. He knew the lights were very bright. He soon learned he could see nothing in his lane of traffic. He knew he was carrying 3,000 gallons of gasoline and a total load of eighteen tons. With such a cargo he increased his speed and drove blindly, taking his chances, with respect to anything he might encounter in his lane of traffic.

In the instant case the obstruction happened to be a truck which had just been wrecked near the place where the blinding lights were stationed. The obstruction might have been a wrecked or moving hayrack, wagon, buggy or other farm machinery. It might have been a farmer riding a horse or an entire family in any sort of vehicle. It might have been a school bus loaded with children. Did the plaintiff have no legal duty or responsibility for their protection? Could he drive blindly without a regard for their safety? Not unless we are prepared to overrule numerous old and recent decisions of this court to which we shall presently refer. Let us reverse the situation and suppose this plaintiff were the defendant and his defense would have been that by reason of the blinding lights, he was not able to see anything in his lane of traffic. Would this court hesitate to sustain a demurrer to his defense? I do not think so. The rule to be sound surely must work both ways.

It is said plaintiff testified he thought he could have seen the taillight on the wrecked truck if it had been lighted. He did finally so testify. He probably could have seen it after he passed the bright lights but he concedes that would have been too late. In view of plaintiff's positive testimony that he could see nothing except the headlights and to the sides as he approached the blinding lights the jury, quite naturally, did not believe he could have seen the taillight if it had been lighted. The jury, therefore, expressly found he could not have seen it. But we are now considering the demurrer and for that purpose we must accept plaintiff's statement as true. We do accept it fully so far as it goes. Nowhere, however, did plaintiff testify that if the taillight had been burning he could have seen it through the lights which so completely blinded him *in time to have stopped, or turned aside,* at the speed he was traveling and the load he was hauling. Manifestly, such proof was essential to make the absence of a taillight material. The result is defendant's negligence in failing to have a taillight burning was not shown to have caused or contributed to the collision in any manner. We may pursue the subject one step further. How can

it aid the plaintiff, even if he had a right to assume the taillight would be burning, when he fails to show that if it had been burning he could have seen it in time to avoid the collision? Manifestly, the absence of the taillight, assuming it was absent, cannot aid the plaintiff in this case.

The opinion also states the jury might think plaintiff was justified in proceeding because he was able to determine the vehicle with the bright lights was not in his lane of traffic. The point might be well taken if there had been a collision between that vehicle and plaintiff's truck. There was no such collision. The question here involved pertains to plaintiff's conduct with respect to an entirely different object which plaintiff struck while it was stalled in his, and in its, lane of traffic.

It is well to remember this is not a case of two vehicles approaching each other where the lights of the cars are such that the parties have obtained a vision of the highway between them before passing each other and are thus reasonably assured of safe passage after they pass each other. This is a case where the plaintiff well knew, as he was approaching the stationary blinding lights, that he could see nothing in his lane of traffic in front or behind such lights. Notwithstanding that fact he increased his speed.

This court is clearly committed to the doctrine that a sudden emergency, created solely by defendant, will not preclude recovery as a matter of law. (See quotation in majority opinion from *Meneley v. Montgomery*, 145 Kan. 109, 64 P. 2d 550.) In this case, however, plaintiff knowing he could not see anything in his lane of traffic, increased his speed, drove on blindly and helped create the emergency of which he now complains. Clearly the emergency presented after he passed the blinding lights was created by the concurrent negligence of both parties. Under such circumstances the emergency doctrine cannot be invoked in plaintiff's aid. (*Barnhardt v. Glycerin Co.*, 113 Kan. 136, 138, 139, 213 Pac. 663; *Eldredge v. Sargent*, 150 Kan. 824, 833, 96 P. 2d 870; 45 C. J., Negligence, § 519.) The facts bring the case squarely within numerous decisions, to be cited presently, in which recovery was denied where a person knowing he could not see deliberately proceeded without assurance he could do so with safety.

Only the decisions from which quotations are contained in the majority opinion require consideration and that may be brief. Such quotations should, however, be considered in the light of some

additional facts disclosed in those cases. The case of *Barzen v. Kepler,* 125 Kan. 648, 266 Pac. 69, presented an emergency created by unlighted and undiscernible timbers which projected thirty feet behind the rear end of defendant's truck. The lights of an approaching car did not blind plaintiff's vision. He attempted to pass the stopped truck and upon observing the nearness of the approaching car turned back into his lane of traffic. When he did so he encountered the end of one of the projecting timbers. It was properly decided it could not be held as a matter of law that plaintiff should have anticipated the projecting unlighted timbers and that he was not required to stop his car and walk forward to see whether the vehicle had timbers projecting from it. (p. 654.)

In the case of *Conwill v. Fairmount Creamery Co.,* 136 Kan. 861, 18 P. 2d 193, the plaintiff had met two cars with lights which prevented him from seeing clearly. The second car was immediately behind the first car. He first observed a stalled truck twenty feet ahead of him. The approach of a third car prevented his passing the truck. While this is a somewhat closer case it should be observed it nowhere appears plaintiff there knew 400 or 500 feet away that he would be required to face very bright lights, to negotiate a curve and a 100-foot bridge. Nor did plaintiff in that case increase his speed and drive blindly knowing he could *see nothing* in his lane of traffic.

In *Anderson v. Thompson,* 137 Kan. 754, 22 P. 2d 438, one of the defendants met an approaching car which gradually blinded her. Before that, however, she had seen, in the distance, the taillight of a car in her lane of traffic. She thought, and had reason to think, the car with the taillight was moving. She reduced the speed of her car to twenty or twenty-five miles per hour. It later developed the car ahead of her was stalled. It was properly held the question whether she exercised reasonable care under those circumstances should be submitted to the jury. The instruction plaintiff requested was, under the facts of that case, held to be too broad and, in my opinion, was properly refused.

In *McCoy v. Pittsburg Boiler and Machine Co.,* 124 Kan. 414, 261 Pac. 30, no bright lights were involved. The speed of plaintiff's car had been reduced to eight miles per hour. The evidence disclosed plaintiff had kept a lookout straight ahead. He was traveling partly on the streetcar track which was slick. His car was turned sharply off the tracks to keep from slipping. In turn-

ing to his right he struck a stalled truck which had been parked there for the night and had no lights on its rear at the time of the collision. There was evidence showing that in the exercise of reasonable care the truck parked near the curbing could not, under the circumstances, have been seen more than ten feet away. Of course, streets and highways are not provided for the storage of automobiles. See, however, in same opinion discussion of the practical phases of stops of greater or lesser duration. (p. 418.)

The majority opinion also stresses the case of *Deardorf v. Shell Petroleum Corp.*, 136 Kan. 95, 12 P. 2d 1103, for the purpose of showing that the question of plaintiff's negligence in the instant case was for the determination of the jury. In my view there is practically no similarity in the facts. Undoubtedly that case was properly submitted to the jury. There again no blinding lights were involved. Plaintiff ran into pipes which projected eight feet back of an unlighted moving trailer as he attempted to pass the trailer. Plaintiff could see the wheels of the trailer when two hundred feet away. He could not, however, see the projecting pipes because the truck bed was above the range of his headlights. In attempting to pass the truck plaintiff slackened his speed. The undiscernible pipes caught the *top of his car*, causing the injury.

The opinion quotes from *Sponable v. Thomas*, 139 Kan. 710, 33 P. 2d 721. That quotation should be read in the light of the facts. Here again plaintiff was not driving into bright lights knowing he could see nothing in his lane of traffic. Plaintiff had reduced the speed of his car to about fifteen miles per hour. Defendant's truck protruded partly across the center of the street. Plaintiff did not see ". . . defendant's dark, drab, unpainted, unlighted truck, the body of which stood high enough off the ground that it was above the range of plaintiff's lights." The result was plaintiff did not see the truck until he was about fifteen feet from it although the lights of his car were in good working condition. (pp. 719, 720.)

In the cases from the majority opinion just analyzed there was at least some question whether the exercise of reasonable diligence in keeping a lookout would have revealed, within the range of plaintiff's vision, the particular object encountered in time to stop or turn aside. In the instant case plaintiff's undisputed evidence did not merely disclose he knew of the bright lights when 400 to 500 feet away. It further disclosed he soon learned he could see nothing in his lane of traffic. Notwithstanding such dangerous circum-

stances he increased the speed of his gasoline transport truck, drove blindly over the remainder of the curve, over the 100-foot bridge and into the stalled truck twenty-two feet beyond the bridge. Such, and much less, careless driving repeatedly has been held to constitute negligence as a matter of law. The rule requiring a driver to articulate his speed with his ability to see and stop, or turn aside, within the range of vision provided by his headlights has been early and recently applied on demurrers to evidence and on motions for judgment on the findings of the jury where the special and detailed findings presented the same legal question.

In the recent case of *Harrison v. Travelers Mutual Cas. Co.*, 156 Kan. 492, 134 P. 2d 681, the principle was applied on a motion for judgment on the findings of the jury. There the plaintiff drove into a parked gasoline transport truck when blinded by lights. There was testimony by the driver of plaintiff's car that if the truck had contained warning lights he could have seen them but he did not show he would have seen them in time to avoid the collision. When the truck came within the vision of his car lights the distance was too short to enable the driver of the car to avoid striking the truck. We held:

"The general rule with respect to a driver's duty and care in the operation of a motor vehicle on public highways is that he must keep his vehicle under such control as will enable him to articulate his speed with his ability to stop, or turn aside, within the range of vision provided by the headlights of his car.

"The general rule stated in the preceding paragraph applies to a person who, by reason of bright lights of oncoming cars and his own dim lights, cannot see an object on the highway ahead of him and who, notwithstanding his inability to see, nevertheless continues to drive at a rate of speed which makes it utterly impossible to stop, or turn aside, in time to avoid a collision with such object." (Syl. ¶¶ 1, 2.)

See numerous precedents cited at page 499 in the above case, and see, also, *Curtiss v. Fahle*, 157 Kan. 226, 139 P. 2d 827.

In the Harrison case it was said:

"The brighter the lights of the oncoming cars the greater was the notice they were approaching. The meeting of cars on a main-traveled highway is a common and not a special experience of the traveling public. It will be observed the jury made no findings the driver of appellees' car was *suddenly* blinded. No special question was submitted to the jury upon the subject of *sudden* blinding. The reason is obvious. A careful search of the record discloses there was no evidence of sudden blinding, or for that matter, of any blinding which could not have been anticipated. The conceded facts are the driver of appellee's car noticed the bright lights and put on his dimmers, which was proper. But with his dimmers on he concedes he drove practically

blind at the high rate of speed of fifty miles per hour. One who so drives, does so at his own risk and peril. (*Howard v. Zimmerman*, 120 Kan. 77, 80, 242 Pac. 131.)." (p. 499)

In the instant case plaintiff's own evidence discloses his blind driving contributed to the creation of the dilemma he faced after he passed the blinding lights and that it was wholly impossible for him to stop or turn aside at the speed of thirty-five miles per hour.

The above general rule has been applied to persons, like appellee, who claimed they could not see an object in their lane of traffic by reason of bright lights of oncoming cars (*Howard v. Zimmerman*, 120 Kan. 77, 80, 242 Pac. 131; *Harrison v. Travelers Mutual Cas. Co.*, supra) ; to persons driving at night with dim lights (*Fisher v. O'Brien*, 99 Kan. 621, 162 Pac. 317) ; to one driving at night when it is misting and raining (*Rhoades v. Atchison, T. & S. F. Rly. Co.*, 121 Kan. 324, 246 Pac. 994) ; to one driving into darkness, fog, and engine smoke (*Jones v. Atchison, T. & S. F. Rly. Co.*, 129 Kan. 314, 316, 282 Pac. 593) ; to one driving in fog (*O'Connell v. Lusk*, 122 Kan. 186, 250 Pac. 1059) ; to one driving in the daytime, at the rate of fifteen miles per hour, when she could not see an object ahead of her in time to stop or turn aside by reason of heavy dust (*Robinson v. Short*, 148 Kan. 134, 79 P. 2d 903; see, also, *Goodman v. Wisby*, 152 Kan. 341, 103 P. 2d 804, another dust case to the same effect) ; and to one driving into smoke so dense that she lost her sense of direction, drove off the highway and was injured (*Frazier v. Cities Service Oil Co.*, 159 Kan. 655, 157 P. 2d 822). Other cases might be cited but these will suffice.

I pause to emphasize that the general rule previously stated, and not any exception thereto, was applied in all of the foregoing cases. Appellee intimates the instant case should constitute an exception to the general rule but he fails to show what facts take it out of the general rule. Nor can I find where the instant majority opinion, in principle, distinguishes this case from those cases or where it recites evidence that brings this case within any recognized exception to the general rule.

In *Carson v. City of Wichita*, 148 Kan. 215, 80 P. 2d 1114, the earlier cases were reviewed, and we said:

"At almost every session of this court we are compelled to deny damages to persons injured in automobile accidents because, *however negligent their adversaries in the litigation may have been,* they themselves have also been negligent in driving their cars (or riding in them without protest) in situa-

tions *where they could not see where they were going, and could not be assured that they could proceed with safety."* (p. 220.) (Emphasis supplied.)

The statement from the Carson case was emphasized in the recent Frazier case, *supra.* The decision in the Frazier (smoke) case was based upon the various cases herein cited. In concluding the pertinent portion of the opinion in the Frazier case, Mr. Justice Thiele, speaking for the court, said:

"While it is true in the instant case the plaintiff did not run into an obstruction such as a parked vehicle nor collide with an oncoming vehicle, nor run into a defect in the highway, *she did proceed along the highway when she could not see where she was going* with the result that she lost her sense of direction and drove off the highway and into the place of danger where she was injured. *Under the decisions above mentioned the legal cause of her injuries was her own negligence."* (p. 664.) (Emphasis supplied.)

Former opinions contain the same or a similar statement of principle. The principle is fully treated in those opinions and it does not require further discussion here. If the principle is to be repudiated those decisions should be overruled. If the decisions are not overruled they control the instant case.

The majority opinion emphasizes G. S. 1943 Supp. 8-5,108 which, under the conditions therein stated, requires the placing of flares or other signals upon the highway. Failure to place such signals around defendant's pickup truck, if the conditions here required them, was part of the defendant's negligence. We are now concerned with plaintiff's negligence and with a demurrer to his evidence. If it were possible for plaintiff to absolve himself of his own negligent blind driving and increase of speed by virtue of defendant's alleged negligence in failing to set out flares, the burden of proof was upon plaintiff to show (1) the absence of flares; and (2) that if they had been present he could have seen them through the blinding lights in time to avoid the collision. This burden plaintiff failed to meet in both particulars. Plaintiff does not contend defendant supplied the deficiency of proof.

It is asserted courts should be practical. To that abstract assertion all will readily agree. But, in order for courts to be truly practical, they must first be just to all parties concerned. Although we may differ in our views, that is the intent and desire of all of us. If, however, the assertion that courts should be practical is intended to mean they must overrule a demurrer to evidence when, as here, it clearly appears a driver deliberately proceeded, and increased his speed, when definitely knowing he could

not do so with assurance of safety to himself or others, I cannot agree. While some drivers may continue to so drive it is neither practical nor just that, when doing so, they should be permitted to compel another to respond in damages for injuries resulting from the concurrent negligence of both parties. Both are required to be vigilant and careful to avoid injuring those who are sharing the use of the streets or highways. (*Anderson v. Thompson,* 137 Kan. 754, 22 P. 2d 438.) In my opinion plaintiff's evidence clearly disclosed he was guilty of contributory negligence as a matter of law and that the demurrer to his evidence should have been sustained.

THIELE and HOCH, JJ., join in the foregoing dissenting opinion.